584 So.2d 2 (1991)
Richard L. DUGGER, etc., Petitioner,
v.
Jeffrey RODRICK, Respondent.
No. 76801.
Supreme Court of Florida.
July 11, 1991.
Susan A. Maher, Asst. Gen. Counsel, Dept. of Corrections, Tallahassee, for petitioner.
Richard A. Belz, Executive Director, Florida Institutional Legal Services, Inc., Gainesville, for respondent.
GRIMES, Justice.
We review Rodrick v. State, 567 So.2d 906 (Fla. 2d DCA 1990), because of its conflict with Miller v. Dugger, 565 So.2d 846 (Fla. 1st DCA 1990). The Court's jurisdiction is based on article V, section 3(b)(3) of the Florida Constitution.[1]
Respondent Jeffrey Rodrick, an inmate in the custody of the Florida Department of Corrections, filed a petition for writ of mandamus challenging the department's denial of provisional credits under section 944.277, Florida Statutes (Supp. 1988). The circuit court denied the petition. Believing that the application of the statute to Rodrick constituted an ex post facto application of the law, the Second District Court of Appeal reversed with instructions to grant the writ.
Section 944.277, Florida Statutes (Supp. 1988), provides that when the inmate population *3 of the correctional system reaches a certain percentage of lawful capacity the department may grant provisional credits to all prisoners except those convicted of certain crimes or serving certain types of sentences. Because Rodrick had been convicted of burglary, kidnapping with intent to commit sexual battery, and aggravated battery, he was ineligible for provisional credits under section 944.277(1)(e). However, under prior inmate population control statutes, section 944.598, Florida Statutes (Supp. 1986), and section 944.276, Florida Statutes (1987), Rodrick's crimes would not have precluded him from eligibility for what the statute now calls provisional credits.[2] Because his crimes were committed on April 17, 1987, which predated the enactment of section 944.277, the court below concluded that Rodrick could not be denied provisional credits.
The First District Court of Appeal reached a contrary conclusion in Miller v. Dugger. In rejecting an inmate's claim for provisional credits under section 944.277, the First District Court of Appeal said:
Section 944.277, formerly section 944.276, awards gain time purely for the administrative convenience of the Department of Corrections. Since the statutes are procedural in nature, they do not create substantive rights, as contrasted to the substantive statute considered in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). See Blankenship v. Dugger, 521 So.2d 1097 (Fla. 1988). Because section 944.277 does not operate to deprive appellant of a substantive right, it is not ex post facto as applied to him.
Miller, 565 So.2d at 848-49. Accord Henderson v. State, 543 So.2d 344 (Fla. 1st DCA), review denied, 551 So.2d 461 (Fla. 1989); Mayo v. Dugger, 535 So.2d 300 (Fla. 1st DCA 1988).
This case is controlled by Blankenship v. Dugger, 521 So.2d 1097 (Fla. 1988), in which this Court passed on the question of whether an inmate who committed crimes in 1984 was properly denied administrative gain time under section 944.276 because of his conviction for sexual battery. Blankenship argued that under section 944.598, which was in effect at the time his crimes were committed, he would not have been precluded from eligibility for administrative gain time. He relied upon Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), which had held that a statute reducing the amount of basic gain time available for good conduct was an ex post facto law as applied to a prisoner whose crime was committed before the statute's enactment. Rejecting this contention, we said:
Petitioner's argument that his case is controlled by Weaver is misplaced. In Weaver the Supreme Court of the United States declared that a Florida law that reduced gain time was ex post facto as applied to prisoners whose crimes were committed before the law was changed. Initially, it should be observed that Weaver is not on point; it dealt with "good time," i.e., time off a prisoner's sentence awarded for exhibiting good behavior. The statutes at issue here award gain time purely for the administrative convenience of the Department of Corrections. Moreover, since these statutes are procedural in nature, as contrasted to the substantive statute considered in Weaver v. Graham, they do not create substantive rights. A retrospective statute may work to a person's disadvantage so long as it does not deprive the person of any substantial right or protection. See Dobbert [v. State,] 432 U.S. 282 293-94, 97 S.Ct. [2290] 2298-99 [53 L.Ed.2d 344 (1977)]. Under Weaver, prisoners entering the correctional system do have a statutory right under section 944.275, Florida Statutes (1985), to "good time" gain time, and it will automatically accrue to them if their behavior meets certain standards. However, when petitioner's crimes were committed, there was no guarantee that the prison population would ever reach ninety-eight percent of capacity while he was incarcerated. *4 Petitioner had no control over the factors that would lead to the Department of Corrections granting administrative gain time.
Blankenship, 521 So.2d at 1099.
The principle of Blankenship has not been affected by this Court's recent decision in Waldrup v. Dugger, 562 So.2d 687 (Fla. 1990), in which we held that a 1983 statutory reduction in incentive gain time could not be applied to inmates convicted of offenses occurring before the effective date of the amendment. In reaching this conclusion, we reasoned that incentive gain time was similar to the basic good-conduct gain time which Weaver v. Graham had held was subject to ex post facto requirements. We did not address the award of provisional credits, which is merely an administrative tool available to alleviate prison overcrowding.
We reject Rodrick's attempt to liken the award of provisional credits to the basic gain time available for good conduct addressed in Weaver v. Graham and the incentive gain time addressed in Waldrup v. Dugger. Both basic and incentive gain time relate to the sentence imposed, and a release date reduced by these awards can be reasonably predicted, based upon length of the term meted out. Basic gain time is applied as a lump-sum award to reduce the overall length of sentence the day the prisoner enters the prison gates. Though not necessarily a part of the sentence in a technical sense, the award of basic gain time is a quantifiable determinant of a prisoner's overall term, which, as the Supreme Court recognized in Weaver, may operate as a "factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Weaver, 450 U.S. at 32, 101 S.Ct. at 966. The potential to earn incentive gain time for labor performed and constructive activities, although contingent upon performance and good behavior, is also quantifiable based upon length of sentence imposed. Thus, to the extent that these two types of "gain time" operate in tandem with the length of sentences imposed, they affect the "quantum of punishment" which attaches at the time the crime is committed.
Conversely, the eligibility and receipt by a prisoner of provisional credits for prison overcrowding, regardless of what they are called, is in no way tied to overall length of sentence. The need for and application of such awards are contingent upon many outside variables that contribute to prison overcrowding. There is no relationship to the original penalty assigned to the crime at the time it was committed nor to the ultimate punishment meted out. The sole purpose of the early-release statutes is to provide a temporary mechanism to alleviate the administrative crisis created by prison overcrowding while continuing to protect the public from violent offenders. The statutes, procedural in nature, are not directed toward the traditional purposes of punishment.
The award of provisional credits is a procedure utilized by the Department of Corrections to reduce prison population and is not a substantive matter of punishment or reward. A retrospective law that alters procedural rather than substantive matters is not an ex post facto law, even though it may work to the disadvantage of the prisoner. Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
We hold, once again, that the award of provisional credits under Florida's inmate population control statute is not subject to ex post facto restrictions because it does not make "more burdensome the punishment for a crime, after its commission."[3]Beazell v. Ohio, 269 U.S. 167, 169, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925). Therefore, Rodrick is not entitled to provisional credits.
*5 We approve the decision in Miller and quash the decision of the court below.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, KOGAN and HARDING, JJ., concur.
NOTES
[1] Because Rodrick was unrepresented, we appointed Richard A. Belz to serve as his counsel.
[2] Earlier prison-overcrowding statutes referred either to emergency release gain time or administrative gain time.
[3] We note that the United States District Court for the Middle District of Florida, Williams v. Dugger, No. 90-602-Civ-T-3A98(A) (M.D.Fla. June 7, 1991) (adopting Report and Recommendation of United States Magistrate entered on April 26, 1991), and the United States District Court for the Southern District of Florida, Petrone v. Dugger, No. 88-12041 (S.D.Fla. Oct. 7, 1988) (adopting Report and Recommendation of United States Magistrate entered on August 8, 1988), aff'd, 886 F.2d 1323 (11th Cir.1989), have reached similar conclusions.