638 So.2d 500 (1994)
Freddie GRIFFIN, Petitioner,
v.
Harry K. SINGLETARY, et al., Respondents.
No. 82452.
Supreme Court of Florida.
May 19, 1994.
Freddie Griffin, pro se.
Susan A. Maher, Deputy Gen. Counsel, Dept. of Corrections, Tallahassee, for respondent.
PER CURIAM.
Freddie Griffin, an inmate in the custody of the Florida Department of Corrections ("DOC"), petitions this Court for writ of mandamus. We have jurisdiction. Art. V, § 3(b)(8), Fla. Const.
Griffin has been in custody since 1986 based on his convictions for second-degree murder, robbery, and grand theft. Between 1986 and 1992, Griffin was awarded "provisional credits" of 1,740 days pursuant to section 944.277, Florida Statutes (Supp. 1988). Another 540 days of "administrative gaintime" were awarded pursuant to section 944.276, Florida Statutes (1987).
On May 7, 1993, DOC cancelled Griffin's provisional credits under authority of opinion 92-96 of the Florida Attorney General. That opinion essentially held that provisional credits given to inmates convicted of certain serious crimes must be cancelled under a 1992 statute. See § 944.277(1)(i), Fla. Stat. (Supp. 1992). On June 17, 1993, DOC cancelled Griffin's administrative gain time pursuant to section 944.278, Florida Statutes (1993) (effective June 17, 1993). Griffin now challenges *501 these actions on grounds they violate constitutional guarantees.
Initially, we find that "provisional credits" and "administrative" gain time are the same for present purposes. In fact, the legislative history discloses that the legislature in 1988 merely changed the name of "administrative gain time" to "provisional credits," when statutes governing prison overcrowding were substantially rewritten effective in 1988. The sole purpose of both forms was to reduce prison overcrowding when the correctional system reached ninety-eight percent of its lawful capacity.[1]Compare § 944.276, Fla. Stat. (1987) with § 944.277, Fla. Stat. (Supp. 1988).
In Dugger v. Rodrick, 584 So.2d 2, 4 (Fla. 1991), this Court held that the state's unilateral decision to restrict the "provisional credit" does not trigger the constitutional issues that would be present if some other forms of credits or gain time were at stake. The reason is that provisional credits are not a reasonably quantifiable expectation at the time an inmate is sentenced. Rather, provisional credits are an inherently arbitrary and unpredictable possibility that is awarded based solely on the happenstance of prison overcrowding. Thus, provisional credits in no sense are tied to any aspect of the original sentence and cannot possibly be a factor at sentencing or in deciding to enter a plea bargain. As a result, we held that provisional credits are not subject to the prohibition against ex post facto laws. Id.
This situation contrasts sharply with so-called "basic" and "incentive" gain time, which were at issue in Waldrup v. Dugger, 562 So.2d 687, 692 (Fla. 1990). These kinds of gain time were reasonably quantifiable at the time of sentencing and thus were a factor that could be taken into account in deciding to enter into a plea bargain. Based on these qualities, we held in Waldrup that the prohibition against ex post facto laws applies to basic and incentive gain time and that inmates had a vested right in such gain time once it was awarded. Id. at 692-94.
Obviously, the only type of gain time or credit at issue here is the "provisional credit" and its earlier equivalent, administrative gain time. Accordingly, the ex post facto clauses of both the federal and state Constitutions do not prohibit the legislature from passing, nor DOC from enforcing, legislation that limits or eliminates the availability of this particular species of credit or gain time, whatever name it is given. Rodrick, 584 So.2d at 4.
A somewhat different issue is posed by Griffin's contention that DOC could not cancel his credits or gain time once it was awarded. This essentially is a question of due process. Griffin relies heavily on the language in Waldrup, which says that basic and incentive gain time become "vested" rights once they are awarded, though subject to revocation through proper proceedings. However, Waldrup obviously was limited to the particular type of credit at issue there. We elsewhere have held that any due process interest in the provisional credit is far less, due to its peculiarly contingent nature and the fact that the state has great discretion in revoking or limiting provisional credits. Rodrick. We also have noted that the United States Supreme Court has only required that "some evidence" support the decision to revoke in this context. Dugger v. Grant, 610 So.2d 428, 432 (Fla. 1992) (quoting Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985)).
In this vein, we believe the state has identified a legally sufficient reason to revoke provisional credits/administrative gain time for inmates such as Griffin. Revocation for present purposes has been confined to those inmates convicted of especially serious crimes, including murder, certain offenses *502 against children, and certain sexual offenses. In Griffin's case, the crime was second degree murder. We believe the state has a more than sufficient reason because of its need to protect society in general from certain categories of felons.
Given the inherently contingent nature of provisional credits and administrative gain time and the strong societal interest, we hold that the courts may not go behind the state's decision to cancel the provisional credits and administrative gain time of this inmate. This conclusion is only reinforced by the fact that the instant cancellation was pursuant to newly enacted legislation that will be applicable to all similarly situated inmates. Absent this legislative authorization, DOC might have been required to initiate proceedings to cancel the credits/gain time.
For the foregoing reasons, Griffin is not entitled to the relief he requests. We deny the petition.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] We acknowledge the State's argument on clarification that the term "gain time" has not been used in connection with the "provisional credits" statute created in 1988. While this is true, the distinction lacks a difference, if only because the two are different names applied to essentially the same thing. For ex post facto purposes, the question is not what name a particular form of "credit" or "gain time" has, but what its actual effect is. Whether classified as "administrative gain time" or "provisional credit," the revocation of the credits at issue here does not violate the guarantee against ex post facto laws for the reasons outlined below.