Jeffrey Lynn HOCK, Petitioner–
Appellant,

v.

Harry K. SINGLETARY, Respondent–
Appellee.

No. 93–2555
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 9, 1995.

Jeffrey Lynn Hock, pro se.

Daniel Te Young, Dept. of Corrections, Tallahassee, FL, for appellee.

Before TJOFLAT, Chief Judge, KRAVITCH and COX, Circuit Judges.

PER CURIAM:

The petitioner, Jeffrey Lynn Hock, is serving a thirty-two year sentence in a Florida prison. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his rights under the Ex Post Facto Clause of the United States Constitution are being violated because he is no longer being awarded provisional credits and is ineligible for control release. On cross motions for summary judgment, the district court found no ex post facto violation and denied relief. We affirm.

### I.

On May 11, 1990, the petitioner was convicted of second degree murder in Broward County, Florida and sentenced to thirty-two years' imprisonment. The offense was committed on October 1, 1988. Upon petitioner's incarceration, the Department of Corrections determined that the petitioner was eligible for early release. He subsequently accumulated 360 days of provisional credit under Florida Statutes § 944.277 (1988). The Department of Corrections made the last award of provisional credit on January 18, 1991, when the Florida Parole Commission assumed responsibility for controlling inmate population through operation of the control release program under Florida Statutes § 947.146. The control release statute was enacted in 1989 and became effective on September 1, 1990. Section 947.146(3)(i) provides that "murderers" are ineligible for control release, and the Department's records indicate that the petitioner is accordingly ineligible for control release. (R.1–6 at A1.) Hock challenges the denial of provisional credit under § 944.277 and the retroactive application of § 947.146 as a violation of the Ex Post Facto Clause.[1]

### II.

The United States Constitution provides that "[n]o state shall ... pass any ... ex post facto law." U.S. Const. art. I, § 10, cl. 1. This clause prohibits the states from enacting "any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (*quoting Cummings v. Missouri*, 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867)). Thus, in order for a criminal or penal law to be ex post facto, it must be retroactively applied and must disadvantage the offender because it may impose greater punishment. *Id.* at 29, 101 S.Ct. at 964. Furthermore, the law need not impair a "vested right" to be ex post facto; a violation may occur when the law "merely alters penal provisions accorded by the grace of the legislature[.]" *Id.* at 30, 101 S.Ct. at 964–65. However, if a statute is merely procedural and does not affect the quantum of punishment attached to the crime, there is no ex post facto violation even when the statute is applied retroactively. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). The

---

1. The Florida Legislature has since cancelled all awards of provisional credits. 1993 Fla.Laws ch. 93–406, § 35 (codified at Fla.Stat. § 944.278 (1993)). The cancellation of provisional credits is not an issue on appeal.

Ex Post Facto Clause operates not to protect an individual's right to less punishment, but rather as a means of assuring that an individual will receive fair warning of criminal statutes and the punishments they carry. *Weaver*, 450 U.S. at 28–30, 101 S.Ct. at 964–65; *Dobbert*, 432 U.S. at 298, 97 S.Ct. at 2300. With these principles in mind, we consider the petitioner's claim that Florida Statutes § 947.146 violates the Ex Post Facto Clause.

## III.

■ Section 947.146, which implemented the control release program, was enacted and took effect after the petitioner committed the offense for which he is now incarcerated. The petitioner is ineligible for the control release program due to the nature of his offense. Thus, section 947.146 is being retroactively applied to deny petitioner eligibility for the control release program. However, in order for § 947.146 to violate the Ex Post Facto Clause, we must also find that the retroactive application of the statute disadvantages the petitioner because it imposes greater punishment. We find that the control release statute is procedural and therefore does not affect the quantum of punishment imposed.

■ Various early release statutes have been used in Florida as a means of controlling prison overcrowding. Under § 944.277, inmates would earn provisional credits anytime the prison population reached or exceeded 98 percent of its lawful capacity. Fla. Stat. § 944.277 (1988). These provisional credits would be applied against an inmate's sentence and reduce the time served in prison. Most recently, the control release statute was enacted to maintain the state prison system at or below 99 percent of its lawful capacity.[2] Fla.Stat. § 947.146(2). Thus, the purpose of control release is to address the administrative problem of prison overcrowding, not to confer a benefit on the prison population. *See* Fla.Stat. § 947.146(2). The Florida Supreme Court has explicitly recognized that early release statutes are "procedural in nature, [and] are not directed toward the traditional purposes of punishment."

*Dugger v. Rodrick*, 584 So.2d 2, 4 (Fla.1991), *cert. denied sub nom. Rodrick v. Singletary*, —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992). The procedural nature of control release indicates that the statute does not affect punishment and is therefore not ex post facto. *See Dobbert*, 432 U.S. at 293, 97 S.Ct. at 2298.

Independent of these Florida authorities, we conclude that any disadvantage suffered by the petitioner does not affect punishment and therefore does not violate the Ex Post Facto Clause. The petitioner relies upon *Weaver* and *Raske v. Martinez*, 876 F.2d 1496 (11th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989), to support his contention that he is disadvantaged by the lost opportunity to reduce his sentence. In *Weaver*, the Supreme Court found a gain time statute ex post facto when applied retroactively because it reduced an inmate's opportunity to shorten his time in prison. *Weaver*, 450 U.S. at 35–36, 101 S.Ct. at 968. Relying upon *Weaver*, this court also found a gain time statute ex post facto when applied retroactively. *Raske*, 876 F.2d at 1498. However, petitioner's reliance is misplaced. First, both *Weaver* and *Raske* dealt with "good-time" gain time statutes; under these statutes inmates could reduce their sentences by exhibiting good behavior. *Weaver*, 450 U.S. at 25–26, 101 S.Ct. at 962–63; *Raske*, 876 F.2d at 1497. The control release statute is quite different. It reduces an inmate's imprisonment automatically for the convenience of the Department of Corrections. The statute is procedural, not substantive like "good-time" gain time, and therefore is not ex post facto. *Rodrick*, 584 So.2d at 4.

Additionally, the retroactive application of control release does not actually disadvantage the petitioner by reducing his opportunity to shorten his time in prison. Because control release is based on an arbitrary and unpredictable determinant, the prison population level, an inmate has no reasonable expectation at the time he is sentenced that the prison population will reach the specified

---

**2.** The Florida Legislature has repealed Fla.Stat. § 944.277 and the use of provisional credits as

an early release mechanism. 1993 Fla.Laws ch. 93–406, § 32.

triggering level and that his incarceration will therefore be reduced. *See id.* Furthermore, "good-time" gain time can be predicted and is often taken into account during plea bargaining and sentencing; therefore, it affects the quantum of punishment that attaches when the crime is committed. *See Weaver,* 450 U.S. at 32, 101 S.Ct. at 966; *Rodrick,* 584 So.2d at 4. However, there is no relationship between eligibility for and receipt of control release and the length of the original sentence. Thus, eliminating the opportunity for control release does not affect the "original penalty assigned to the crime at the time it was committed nor to the ultimate punishment meted out." *Rodrick,* 584 So.2d at 4.

■ Finally, petitioner's right to receive fair notice of the punishment his offense carries has not been compromised. *See Weaver,* 450 U.S. at 30, 101 S.Ct. at 965. Although petitioner may be disadvantaged by the application of the control release statute, its procedural and arbitrary nature does not affect petitioner's punishment. His punishment remains what it was when he committed the offense, at which time he had received fair notice of the crime and the punishment it carries.

### IV.

■ Although petitioner did not specifically raise a due process argument in his petition, the district court found that the challenged provision did not "create either a reasonable expectation of release or substantive or procedural due process rights." (R.1–12 at 5; R.1–15.) Because the due process issue was considered by the district court, we address this issue and affirm the district court's conclusion.

In order to have a protectible right under the Due Process Clause, " 'a person clearly must have more than an abstract need or desire for [the right]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979) (*quoting Board of Regents v. Roth,*

408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972)).

Here, Florida Statutes §§ 944.277 and 947.146 are administrative, designed solely to relieve prison overcrowding. The petitioner had no reasonable expectation that the prison population would ever reach a level that would trigger the use of these early release mechanisms; he had no reasonable expectation of release on any given date. Thus, no liberty interest vests under these statutes. Retroactively applying § 947.146 to petitioner and determining him ineligible for control release, therefore, does not deprive him of any liberty interest protected by the Due Process Clause.

For the foregoing reasons, the petitioner is not entitled to the relief he requests. We affirm the district court's denial of Hock's petition.

AFFIRMED.