Calvin J. HERRING, Petitioner,

v.

Harry K. SINGLETARY, Jr., Department of Corrections, Robert Butterworth, Attorney General for State of Florida, Respondents.

No. TCA 93–40298–MMP.

United States District Court,
N.D. Florida,
Tallahassee Division.

March 10, 1995.

Calvin J. Herring, pro se.

Bernice Cecilia Bradley, Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, for respondents.

### ORDER AND FINAL JUDGMENT

PAUL, Chief Judge.

This cause is before the Court upon the magistrate judge's report and recommendation dated February 16, 1995. All parties have been furnished copies of the report and recommendation and have been afforded an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). Having considered the report and recommendation and all objections thereto timely filed by the parties, the Court has determined that the recommendation should be adopted.

Accordingly, it is

ORDERED:

1. The magistrate judge's report and recommendation is adopted and incorporated by reference in this order of the Court.

2. The petition for writ of habeas corpus seeking the return of cancelled provisional credits is hereby DENIED.

*REPORT AND RECOMMENDATION*

SHERRILL, United States Magistrate Judge.

This cause is before the court upon a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 4. Petitioner challenges the forfeiture of 1,540 days of provisional credit against his sentence. Provisional credit had been extended to Petitioner by operation of Fla.Stat. § 944.277 (1988). The credit was revoked:

> In accordance with the Attorney General's opinion 92–96, issued on December 29, 1992 and clarified on December 31, 1992, which stated that the Legislative changes to Florida Statute 944.277 effective July 6, 1992, mandated that inmates convicted of murder and/or attempted murder are ineligible for awards of provisional credits; therefore, on January 22, 1993, the Department voided the 1,540 days of provisional credits previously awarded to inmate Herring.

Ex. A (hereafter all references are to the exhibits to doc. 10 unless otherwise stated).

## I. Procedural history of this case

Petitioner was sentenced on July 10, 1985, and received by the Florida Department of Corrections (DOC) on August 1, 1985. Doc. 10, Ex. A. Petitioner was convicted of second degree murder and other offenses. *Id.* Petitioner received jail credit for 521 days served prior to sentencing, *Id.,* so his offense was committed at least 17 months before sentencing, in 1984 or earlier.

Petitioner's claim requires a review of some eleven years of legislative history. At the time Petitioner's crimes were committed, Fla.Stat. § 944.598 (1983) was in effect.[1] It provided for release of prisoners after the declaration of a state of emergency, awarding a maximum of 5 days gaintime, in 5 day increments, to each inmate's term until population reached 97% lawful capacity.

§ 944.598 (1983). The steps necessary to activate the provisions of this section were never taken, and so no credits have ever been granted to a prisoner under this section. *Blankenship v. Dugger,* 521 So.2d 1097, 1098 (Fla.1988).

The second early release mechanism to alleviate prison overcrowding was administrative gaintime, which became operational at 98% lawful capacity. When the inmate population reached 98%, it provided the Secretary of the DOC "shall certify" the condition to the Governor. Fla.Stat. § 944.276(1) (1987). When the Governor acknowledged this in writing, the Secretary "may" grant up to 60 days administrative gaintime equally to all inmates earning incentive gaintime, with certain enumerated exceptions. § 944.276(1)(a)–(d) (1987).[2] The Secretary's authority to do so would cease when the population was lowered to 97% of lawful capacity. § 944.276(2). This statute, providing for "administrative gaintime," was in effect from February 5, 1987, to July 1, 1988.[3] All awards of administrative gaintime under § 944.276 were cancelled for inmates serving a sentence or combined sentence in DOC custody. § 944.278 (1993). Presumably Petitioner's cancelled credits included some of such administrative gaintime.

The third mechanism for alleviating prison overcrowding was provisional credits, effective June 18, 1988.[4] § 944.277 (1988). This is the statute at issue in this case. It lowered the threshold to 97.5% of lawful capacity. Like the incentive gaintime provision, it provided that the Secretary "shall" notify the Governor, and that upon written acknowledgement of the Governor the Secretary "may" grant up to 60 days equally to each inmate earning incentive gaintime, with enumerated exceptions. § 944.277(1) (1988). The exceptions were not applicable to Petitioner.

---

1. The effective date of the statute was June 15, 1983, the date the law was approved by the Governor. *See* Ch. 83–131, §§ 5, 43, Laws of Fla.

2. Exempted were inmates serving certain minimum mandatory sentences, those convicted of sexual battery or certain sexual offenses who had

not yet completed a treatment program, and habitual felony offenders.

3. Ch. 87–2, §§ 1–3, and ch. 88–122, § 6, Laws of Fla.

4. Ch. 88–122, §§ 5 and 92, Laws of Fla.

Section 944.277(3) (1988) provided that at the time provisional credits were granted, the DOC "*shall*" establish a provisional release date for each eligible inmate, which would be the tentative release date minus provisional credits granted. It further provided that "[a]ny eligible inmate who is incarcerated on the effective date of an award of provisional credits *shall* receive such credits." § 944.277(4) (1988) (emphasis added). An inmate receiving 30 or more days of provisional credit toward a sentence for an offense committed after July 1, 1988, "*must be released into the provisional release supervision program on his provisional release date, unless such inmate is also serving a sentence for an offense which occurred before July 1, 1988.*" § 944.277(5) (1988) (emphasis added). Inmates released to provisional release supervision were not entitled to additional gaintime, but if required to serve probation or community control after release, that period "must be substituted" for the provisional release supervision term. *Id.* The term of provisional release supervision would be equal to the number of days provisional credit, but not to exceed 90 days unless extended for violation. § 944.277(6) (1988). Upon violation of the written terms and conditions of provisional release, the DOC could continue supervision, extend the period of supervision up to the total number of provisional credits, terminate supervision and cancel provisional credits previously earned, or issue a warrant for the inmate's arrest. § 944.277(8) (1988).

In 1989 the provisional credit statute was revised to exclude inmates ever convicted, *inter alia*, of committing (or attempting to commit) murder in the first, second, or third degree. § 944.277(1)(h) and (i) (1989). A footnote to those two sections in the statute indicates that they are applicable to offenses committed on or after January 1, 1990. When § 944.277(1) was again amended in 1992, it still contained the exclusions but, as discussed further below, did not specify an effective date.

In 1993 all provisional credits previously granted were cancelled by Fla.Stat. § 944.278. Finally, a fourth mechanism to relieve overcrowding was the creation of what is called control release, administered by the Florida Parole Commission as the Control Release Authority. § 947.146 (1989–1993).

## II. Legal Analysis

As noted above, Petitioner's claim begins with Attorney General's Opinion (AGO) 92–96. A copy of that opinion is supplied as Ex. B. There, the Florida Attorney General noted that, although the prohibition against awarding provisional credits to anyone convicted of murder or attempted murder in the first, second, or third degree was added in 1989, and that amendment applied only prospectively, the amendment to § 944.277(1) in 1992 did not contain an effective date. The lack of an effective date was thought to be evidence that the legislature intended the amended statute to have retroactive application. After AGO 92–96, the legislature enacted Fla.Stat. § 944.278 (1993) [5] retroactively cancelling all awards of administrative gaintime and provisional credits [6] for *all* inmates serving a sentence in the custody of the DOC or serving a state sentence in custody of another jurisdiction.

### A. Eleventh Circuit precedent

The Eleventh Circuit has recently addressed the credits at issue here. It held that the prospective denial of provisional credit under § 944.277, and the retroactive application of control release under § 947.146, did not violate the *Ex Post Facto* Clause or due process. *Hock v. Singletary*, 41 F.3d 1470 (11th Cir.1995). The court found no liberty interests vested under § 944.277 or § 947.146. While the court noted that all provisional credits had been cancelled pursuant to Fla.Stat. § 944.278 (1993),

---

5. Section 944.278 was added by Ch. 93–406, § 35, Laws of Fla., effective June 17, 1993. AGO 92–96 was dated December 29, 1992.

6. In *Griffin v. Singletary*, 638 So.2d 500 at 501 (Fla.1994), discussed *infra*, the Florida Supreme Court found provisional credits and administrative gaintime the same for purposes of constitutional review. This court will therefore use the term provisional credits to refer to both provisional credits and administrative gaintime.

it stated that it did not intend to address the cancellation of credits since that was not an issue on appeal. 41 F.3d at 1471, n. 1.

### B. Petitioner's claim as construed by this court

■ Petitioner's claim that his credits were improperly revoked after Fla.Stat. § 944.277(1) (1992) was interpreted by AGO 92–96 as having retroactive application is a constitutional challenge to that interpretation of the statute.[7] But that claim becomes moot if a challenge to Fla.Stat. § 944.278 (1993) would fail.[8] Since Petitioner proceeds *pro se*, this court construes his claim as including the same challenge to § 944.278 (1993). Since the analysis of that statute is dispositive of Petitioner's claim, there is no need to discuss AGO 92–96.

### C. The *Ex Post Facto* claim

■ *Hock* determined that the denial of provisional credit "does not affect the 'original penalty assigned to the crime at the time it was committed nor the ultimate punishment meted out.'" 41 F.3d at 1473, *citing Dugger v. Rodrick*, 584 So.2d 2, 4 (Fla.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992). This conclusion, and the determination that "its procedural and arbitrary nature does not affect petitioner's punishment," *Id.*, is the same whether the ineligibility for credit is applied prospectively or the credits are cancelled retroactively. A change in the law either affects the original punishment or it does not. Thus, there is no *ex post facto* violation in the cancellation of credits once awarded.

7. It also implicates a question of state law, whether the statute was intended to be retroactive.

8. If he were to prevail in a challenge to AGO 92–96 only, he would not be entitled to the credits forfeited because they would be immediately cancelled by operation of § 944.278 (1993). Thus, the controversy as to the earlier statute, as interpreted by the Attorney General, becomes moot if the later statute is valid. *Cf., United States ex. rel. Graham v. United States Parole Comm'n*, 732 F.2d 849, 850 (11th Cir.1984) (challenge to parole regulation mooted by release on parole, as a favorable decision would not entitle petitioner to any additional relief).

9. The *Griffin* court did not expressly state that there was no liberty interest in credits once

### D. Due Process Analysis

*Hock* is not dispositive of the due process claim before this court, as it expressly did not address the cancellation of credit under § 944.278. Cancellation of credits already awarded conceivably presents a different question (depending upon the state law involved) than the prospective denial of credit. *See, Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir.1987), *cert. denied*, 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988) (while there was no liberty interest for Alabama prisoner in the expectation of parole, a different issue was whether having exercised the discretion to grant it, the parole board was constrained by substantive limitations on its authority to rescind parole); *Whitehorn v. Harrelson*, 758 F.2d 1416, 1422 (11th Cir.1985) (noting the "crucial distinction between being deprived of a liberty one has ..., and being denied a conditional liberty that one desires") (citation omitted, omission in original).

The Florida Supreme Court has addressed the cancellation of provisional credits already awarded. *Griffin v. Singletary*, 638 So.2d 500 (Fla.1994) (addressing the loss of provisional credit by Fla.Stat. § 944.277 as construed by AGO 92–96, and subsequently after the enactment of § 944.278); *Langley v. Singletary*, 645 So.2d 961 (Fla.1994) (cancellation of credit under § 944.278 only). Neither expressly decided the liberty interest issue,[9] but went on to find that due process was not violated by the legislative cancellation of credits. 638 So.2d at 502; 645 So.2d at 961.

awarded, but distinguished cases involving basic and incentive gaintime finding "any due process interest in the provisional credit is far less...." 638 So.2d at 501. *Griffin* also said that, absent the legislative authorization of § 944.278, the DOC might have had to initiate individual proceedings for cancellation of the credits. 638 So.2d at 502. This *dicta* evidences that Court's concern that a liberty interest might have been present requiring procedural due process afforded by the executive branch, absent an "across-the-board" cancellation by the legislature. *Langley* relied on the finding in *Griffin* that the "across-the-board" legislative cancellation of credit under § 944.278 did not violate due process.

The *Griffin* Court also relied upon the existence of "some evidence" for cancellation of the credit, citing *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). 638 So.2d at 501; 645 So.2d at 961.[10]

■ This court likewise need not decide whether Petitioner had a due process "liberty" interest created by state statute in the provisional credits granted to him. The credits were cancelled by statute. The enactment of a statute affecting liberty or property interests does not implicate procedural due process because the legislative process itself provides the all of the process that is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982).

> The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.

*Bi–Metallic Investment Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915), *quoted in Atkins v. Parker,* 472 U.S. 115, 130, n. 33, 105 S.Ct. 2520, 2529, n. 33, 86 L.Ed.2d 81 (1984), and *Peterman v. Coleman,* 764 F.2d 1416, 1419 (11th Cir.1985), and cited in *Logan,* 455 U.S. at 433, 102 S.Ct. at 1156. Petitioner, therefore, has no procedural due process claim.

Thus, only a substantive due process claim is at issue in this facial challenge to the statute.[11] There has been no showing here that cancellation of the provisional credits impinged upon any fundamental right arising from the Constitution itself. If Petitioner had any due process liberty interest in the provisional credits at all, it had to be a one created only by state law, an issue which this court need not decide.

■ Where a liberty interest is one arising only from state law, the "statute will not violate the Due Process Clause if it is rationally related to a legitimate government interest." *Parks v. City of Warner Robins, et al.,* 43 F.3d 609, 615 (11th Cir.1995). The test is the same, but applied slightly differently, when a statute has retrospective application:

> Our standard of review is settled: "[R]etroactive legislation does have to meet a burden not faced by legislation that has only future effects. 'It does not follow … that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.' But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose."

*United States v. Sperry Corp.,* 493 U.S. 52, 64, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989), quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984) (other citations omitted, edits in original).

---

**10.** The "some evidence" rule enunciated in *Hill* was in the context of the nature of the procedural due process which must be afforded when the executive branch takes a state created due process liberty interest. 472 U.S. at 454, 105 S.Ct. at 2773. Since *Hill* did not involve application of the Due Process Clause to legislative action, it is not dispositive in this case.

**11.** *See Parks v. City of Warner Robins, et al.,* 43 F.3d 609, 613, n. 2 (11th Cir.1995). *Parks* noted that *McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995), concerned only due process claims arising from executive action. *Id.*

*McKinney* and *Parks,* read together, clarify the distinction between fundamental and state created rights in the context of non-legislative acts (substantive due process is violated if a right created by the Constitution is infringed, procedural due process is violated only if a state created right is infringed *and* procedural due process is not provided), and another in the context of legislative (or quasi-legislative) acts (only a substantive due process claim may be made, legislation infringing rights created by the Constitution is subject to strict scrutiny, and legislation infringing *nonfundamental rights are subject to* rational basis scrutiny).

■ The actual reasons advanced for the legislation, if any, may be consulted to ascertain if a conceivable rational purpose underlies the statute. The legal question, however, is not actual legislative motive, but whether there is a conceivable rational basis for the legislation. *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1234 (9th Cir.1994). *Cf. F.C.C. v. Beach Communications, Inc.,* —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993) (equal protection claim); *Panama City Medical Diagnostic Ltd. v. Williams,* 13 F.3d 1541, 1545 (11th Cir.1994) (equal protection claim).

■ In this case, the Florida Supreme Court in *Langley* articulated a conceivable rational basis for the revocation of credits under § 944.278:

> [A]dministrative gain time and provisional credits were temporary devices for achieving federally mandated reduction in prison overcrowding. The legislature now has determined that the problem has lessened and that other devices are available that render administrative gain time and provisional credits redundant or unnecessary. These devices include increased building of prisons, front-end diversionary programs, and certain other early release programs.

645 So.2d at 961. *Cf., Williams,* 13 F.3d at 1546, n. 3 (noting that in *Beach Communications,* one of the rationales relied on by the Court was not given by the legislature, but by a concurring circuit judge).

The state has a legitimate interest in seeing that prisoners serve their sentences. It also has a legitimate interest in creating a mechanism to relieve prison overcrowding when it reaches crisis proportions. When that mechanism is no longer necessary, for whatever reason, the state has a legitimate interest in ceasing its operation. Here the mechanism was the awarding of credits, which has been deemed no longer necessary. Cancellation of those credits for persons still in prison (since implementation requires only recalculation of release dates), is rationally related to these legitimate interests.

Since Fla.Stat. § 944.278 (1993) is rationally related to legitimate state interests, the substantive due process challenge to the statute fails. The challenge to Fla.Stat. § 944.277, as interpreted by AGO 92–96, even if successful, would not entitle Petitioner to further relief, and therefore need not be considered.[12]

### E. The equal protection claim

■ "Different treatment of dissimilarly situated persons does not violate the equal protection clause." *E & T Realty v. Strickland,* 830 F.2d 1107, 1109 (11th Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Where a suspect class or fundamental interest is not present, and the classification is not based upon gender, the equal protection question is simply whether the classification is rationally related to a legitimate purpose. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973).

■ Petitioner is not similarly situated with persons who were released by application of provisional credits before AGO 92–96 or the effective date of § 944.278. Further, limitation of the new statute to persons still incarcerated was rationally related to the legitimate state interest of efficiency, since application to those already released would require the state to arrest all those inmates who had been released by application of provisional credits. That they were released, and now have begun lives in the free world, is a substantial difference from those still in prison. The equal protection claim, like the substantive due process claim, fails because there is a conceivable rational basis for a legitimate state interest.

It is therefore respectfully RECOMMENDED that the petition for writ of habeas corpus seeking the return of cancelled provisional credits be DENIED.

---

12. In any event, whether the AGO correctly interpreted the statute is, in the first instance, a matter of state law which does not implicate federal interests. Were this court to consider this claim as originally framed, it would undoubtedly defer to state authorities as to interpretation of its own statutes, and would then reach the federal question, which pertains entirely to Fla.Stat. § 944.277 as so interpreted.

IN CHAMBERS at Tallahassee, Florida, this 16th day of February, 1995.