[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-10654

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-00427-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ADEL BORDON,
a.k.a. Luisito,
LUIS BORDON,
 a.k.a. Luisito Jr., etc.,
et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 25, 2005)**

Before ANDERSON, PRYOR and HILL, Circuit Judges.

PER CURIAM:

Luis Adel Bordon ("Bordon") and his sons, Luis Bordon and Adel Bordon,

appeal their sentences for: (1) conducting an illegal gambling business, in violation

of 18 U.S.C. § 1955; and (2) conspiring to commit money laundering by conducting financial transactions involving the proceeds of an illegal gambling business with the intent of promoting that illegal gambling activity and concealing the nature and proceeds of the illegal gambling activity, in violation of 18 U.S.C. § 1956(h). The Bordons argue that the Feeney Amendment, which states that a sentencing court should apply the Guidelines that were in place prior to the appeal, should not have been applied to their sentence. The Bordons contend that the retroactive application of that amendment violates the *Ex Post Facto* Clause. The Bordons further argue that the district court erred in its calculation of monetary loss associated with the crime and that the seventeen-month delay between the district court's receipt of the appellate mandate and the imposition of the sentence violated the Bordons' right to sentencing without unreasonable delay. We reject their arguments and affirm their sentence.

## I. FACTS AND PROCEDURAL HISTORY

This is the third time this case has come before this Court on appeal.

A. Underlying Crime

Bordon opened a liquor store and a legitimate check cashing business in 1986. In 1988, a long-time friend, Raul Fernandez, approached him and asked him to cash checks for him. Bordon agreed to cash checks for Fernandez for a fee.

2

Bordon was aware that the checks cashed were proceeds emanating out of Fernandez's illegal "bolita" gambling enterprises. Eventually, Fernandez was funneling $15,000 each week through Bordon's liquor store and would routinely come to the store and deliver or pick up the checks or cash for his gambling business. Through word of mouth, other illegal bolita operators became aware of Bordon's ability to cash/launder checks and began using his liquor store for this same purpose. Bordon's sons helped operate the liquor store. The sons were aware of and participated in their father's illegal relationship with Fernandez and the other bolita players. In August 1998, a jury found the Defendants guilty of conspiring to launder proceeds of the illegal gambling operation, and of conducting the same.

B. First Sentencing

The trial court originally sentenced the Bordons in November 1998. The trial court used a base offense level of twenty. Following the 1998 money laundering guidelines, the court enhanced seven levels based on the amount of money involved in the gambling operation. In calculating the amount of money involved, the court deferred to the jury's special verdict finding that $5,756, 232.85 was involved in the gambling operation and should be forfeited. The trial court then departed downward two levels from the Sentencing Guidelines based on the

view that the true nature of the crime departed from the "heartland consideration of the Sentencing Commission." The sentencing judge also noted that if the Defendants had been prosecuted in state court they would have received a lesser sentence, and "money laundering in what [were] substantially misdemeanor offenses under statutes for the offense of operating a bolita business, would not rise to the level that this type of sentencing should apply." Finally, the district court granted a two point reduction to the sons for their limited role in the offense. Ultimately, Bordon's offense level was twenty-five, which recommends 57-71 months in prison, and his sons' offense levels were twenty-three, which recommends 46-57 months in prison. The trial court imposed prison sentences of 57 months for Bordon, 46 months for his sons, and issued a preliminary order forfeiting each appellant's interest in $5,756, 232.85.

C. First Appeal

The Bordons appealed their conviction and the forfeiture order. The government cross-appealed the sentencing judge's base level calculation and downward departure.

On July 21, 2000, in United States v. Bordon, No. 98-5841 (11th Cir. July 21, 2000) ("Bordon I"), an unpublished opinion, this Court affirmed the Bordons' convictions, but found in favor of the government on its cross-appeal. The opinion

stated that the trial court erred when it used the base level of twenty instead of twenty-three, and that the district court abused its discretion when it departed downward from the Sentencing Guidelines because the downward departure was a misapplication of the Guidelines.  In holding that the district court erred in departing downward, this Court stated, "A court may not depart from the sentencing guidelines . . . merely because it believes that the sentence mandated is excessive . . .. The district court's explanation for a downward departure here reflects a dissatisfaction with the sentence mandated for money laundering crimes." Bordon I at 15-16 (internal citations omitted).

D.  Second Sentencing (First Re-sentencing)

The district court re-sentenced the Bordons on July 13, 2001.  As instructed by this Court in Bordon I, the district court used a base level of twenty-three, and then enhanced seven levels for the amount of money involved in the crime.  The court granted a two-point reduction to the sons for having a minor role in the crime.  Accordingly, the court assigned an offense level of thirty to Bordon and twenty-eight to each of his sons.   The sentencing range for offense level thirty, criminal history category I, is 97-121 months, and the sentencing range for offense level twenty-eight, criminal history category I, is 78-97 months.  When considering a downward departure, the court stated, "I find that I have no discretion except to

5

sentence within that guideline range." Accordingly, the court imposed a sentence of 97 months for Bordon and 78 months for each of his sons.

E. Second Appeal

On August 23, 2002, this Court once again vacated and remanded the Bordons' sentences. United States v. Bordon, No. 01-14211(11th Cir. Aug. 23, 2002) ("Bordon II"). This Court found that the district court erred by construing this Court's opinion in Bordon I as having removed the district court's discretion to consider a downward departure. Bordon II stated that our holding in Bordon I did not preclude the district court from departing downward during re-sentencing so long as the court made the necessary findings on the record. Accordingly, and expressing no view as to whether a downward departure should be granted, this Court once again vacated and remanded the Bordons' sentences to the district court.

F. Legal Changes

Two notable changes in the law occurred during the course of this case. First, in November 2001, after the Bordons appealed their second sentence, but before this Court's second decision was issued vacating it, Congress approved a revised version of the guideline associated with money laundering, U.S.S.G. § 2S1.1. This revision probably would have indicated a significantly reduced

guideline range in this case had the Bordons been sentenced in 2001 or after.

Second, in April 2003, Congress passed the PROTECT Act. Section 3742 (g)(1) of the act, known as the Feeney Amendment, provides that when re-sentencing after appellate remand, a district court should apply the Guidelines that were in place prior to the appeal.

G. Third Sentencing (Second Re-sentencing)

On January 23, 2004, the district court entered an order sentencing the Bordons for the third time. This is the sentence that is currently before us on appeal.

At their third sentencing, the Bordons argued that the Guidelines as amended in 2001, as opposed to the 1998 Guidelines, should apply to their sentences. The Bordons argued that the Feeney Amendment should not apply because their sentences were vacated, in addition to being remanded, and that the imposition of the 1998 Guidelines violated the *Ex Post Facto* Clause. The Bordons further argued that the amount of money involved in the crime was improperly determined, and that they were entitled to a downward departure from the sentencing range in the Guidelines. The district court rejected all of these arguments. The district court used the 1998 Guidelines in light of the Feeney Amendment and once again calculated an offense level of thirty for Luis Adel Bordon and an offense level of

twenty-eight for Luis Bordon and Adel Bordon. Thus, the district court again sentenced Bordon to 97 months and his sons to 78 months, the low end of the guideline range in each case.

## II. DISCUSSION

On appeal, the Bordons argue: (1) the district court erred by applying the Feeney Amendment to their re-sentencing; (2) the "retroactive application" of the Feeney Amendment violated the *Ex Post Facto* Clause; (3) the district court erred in its calculation of monetary loss associated with the crime; (4) and the seventeen-month delay between the district court's receipt of the appellate mandate and the imposition of the sentence violated the Bordons' right to sentencing without unreasonable delay.[1] We reject all of these arguments and affirm the Bordons'

---

[1] Before oral argument, the Bordons also submitted a Notice of Supplemental Authority pursuant to Fed.R.App. P. 28(j) citing United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 764 (2005), and urging this Court to consider the case as outcome determinative; the Booker claim was fully discussed at oral argument. We recognize that the Bordons could readily satisfy the plain error analysis we announced in United States v. Rodriguez, 398 F.3d 1291 (11th Cir. 2005), and United States v. Shelton, 400 F.3d 1325 (11th Cir. 2005). This is because the sentencing judge in their case not only stated that he believed the sentence was excessive, but in his initial sentencing, actually departed downward on a belief that the sentence was excessive. However, the Defendants' Booker claim was not timely raised in their initial brief on appeal and is thus subject to this Court's prudential rule as articulated in United States v. Dockery, 401 F.3d 1261, 1262 (11th Cir. 2005); United States v. Levy, 379 F.3d 1241, 1242 (11th Cir. 2004), reh'g en banc denied, 391 F.3d 1327 (11th Cir. 2004), vacated by __ U.S. __, 125 S.Ct. 2542 (2005), reinstated by __ F.3d __, 2005 WL 1620719 (11th Cir. July 12, 2005); and United States v. Ardley, 242 F.3d 989, 990 (11th Cir. 2001). This Court's long-standing rule is that issues and contentions not timely raised in the briefs are deemed abandoned. Ardley, 242 F.3d at 990. The court has opted to apply this rule uniformly and equally to

sentences.

First, the Bordons' argument that the Feeney Amendment should not apply to their sentence because it was "vacated and remanded" is refuted by the plain language of the Amendment. The Feeney Amendment states:

> (g) Sentencing upon remand.--A district court to which a case is remanded pursuant to subsection (f)(1) or (f)(2) shall re-sentence a defendant in accordance with section 3553 and with such instructions as may have been given by the court of appeals, except that–
> > (1) In determining the range referred to in subsection 3553(a)(4), the court shall apply the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that were in effect on the date of the previous sentencing of the defendant prior to the appeal, together with any amendments thereto by any act of Congress that was in effect on such date.

18 U.S.C.A. § 3742.(g)(1). The Amendment references 18 U.S.C. 3742(f)(1)-(2).[2]

---

all cases, and thus we are unable to entertain the Bordons' <u>Booker</u> claim.

[2] 18 U.S.C. 3742(f)(1-2) states:
> (f) Decision and disposition.--If the court of appeals determines that--
> > (1) the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;
> > (2) the sentence is outside the applicable guideline range and the district court failed to provide the required statement of reasons in the order of judgment and commitment, or the departure is based on an impermissible factor, or is to an unreasonable degree, or the sentence was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and--
> > > (A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g);

The following subsection, 18 U.S.C. 3742(f)(3),[3] requires an appellate court to affirm a sentence if the appealed sentence does not fall within § § 3742 (f)(1) or (f)(2). Therefore, subsections (f)(1) and (f)(2) encompass all of the possible scenarios for non-affirmance of a sentence, including sentences that are vacated, like the Bordons'.[4]

Next, the application of the Feeney Amendment to the Bordons' sentences does not violate the *Ex Post Facto* Clause. In Hock v. Singletary, 41 F.3d 1470 (11th Cir. 1995), this Court explained, "The *Ex Post Facto* Clause operates not to protect an individual's right to less punishment, but rather as a means of assuring that an individual will receive fair warning of criminal statutes and the punishments they carry." Id. at 1471-72 (citing Weaver v. Graham, 450 U.S. 24, 28-30, 101 S.Ct. 960, 964-65 (1981), and Dobbert v. Florida, 432 U.S. 282, 298, 97 S.Ct.

---

(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate, subject to subsection (g). 18 U.S.C.A. § 3742

[3]    18 U.S.C.§ 3742 f(3) states: "[if the court of appeals determines that] the sentence is not described in paragraph (1) or (2), it shall affirm the sentence."

[4]    In United States v. Booker, 543 U.S. __, 125 S. Ct. 738, 764 (2005), the Supreme Court excised a portion of the Feeney Amendment,18 U.S.C. § 3742(e), but left intact § 3742(g), the provision addressing what version of the Guidelines a court should use on remand.

2290, 2300 (1977)).  The Feeney Amendment requires that the Sentencing Guidelines in place at the Bordons' original sentencing be applied on remand.  In this case, the Amendment does not impose a greater sentence on the Bordons, but merely declines to grant them a favorable change in the law that occurred after they committed their crime.  In Johnson v. United States, 529 U.S. 694, 120 S.Ct. 1795 (2000), the Supreme Court explained that in order to prevail on an *ex post facto* claim, a defendant "must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted."  Id. at 699, 120 S.Ct. at 1800.   The Feeney Amendment does not raise the penalty from what it was at the time the Bordons committed their crime, and therefore does not violate the *Ex Post Facto* Clause.   When the Sentencing Commission revised the guideline associated with money laundering, U.S.S.G. § 2S1.1, it  did not indicate that the amendment should be applied retroactively.  Accordingly, the district court properly used the 1998 version of  U.S.S.G. § 2S1.1 because that was the version of the Guidelines in effect on the date of the Bordons' previous sentencing, prior to their first and second appeals.

We decline to consider the Bordons' claim that the district court improperly calculated the monetary loss associated with the crime because this Court

11

previously reviewed and affirmed the calculation; there is no new evidence, no new controlling authority, <u>Bordon I</u> was not clearly erroneous in this respect, and the opinion did not present a manifest injustice with regard to this issue. Therefore, the district court properly determined that the monetary calculation was law of the case. <u>Oladeinde v. City of Birmingham</u>, 230 F.3d 1275, 1288 (11th Cir. 2000) (stating that both district and appellate courts are generally bound by an earlier appellate decision in the case unless there is new evidence, new controlling authority, or the earlier opinion is clearly erroneous and would result in manifest injustice); <u>see</u> <u>also</u> <u>United States v. Tamayo</u>, 80 F.3d 1514, 1520 (11th Cir. 1996) (stating "in the interest of judicial economy for the [district court] not to redo that which had been done correctly at the first [sentencing], we have held that there is 'nothing improper' in the district court's limiting the scope of a re-sentencing proceeding," and holding that the approach is consistent with our law of the case doctrine).

Finally, we conclude that the seventeen-month delay between the time that this Court issued its second appellate mandate (August 2002) and the imposition of their sentences (January 2004) did not violate their Sixth Amendment right to a speedy trial. In reviewing the delay, the district court found that events contributing to the delay included the Bordons' request for updated PSIs in late

August 2003 (which take two months to prepare); the unavailability of a defense lawyer during a 19-day period in July 2003; two extensive re-sentencing hearings in August 2003; and the Bordons' filing of numerous re-sentencing memoranda and objections beginning in August 2003, which raised a plethora of legal issues that required extensive and thorough analysis. The district court further noted that nothing was filed to bring to the court's attention that re-sentencing was delayed beyond what it should be or to request that the court move more swiftly. We conclude the district court's explanation is supported by the record and, given the delay was in significant part due to the Defendants, we conclude that this claim is without merit.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.


HILL, Circuit Judge, concurring:

With lack of enthusiasm, I concur.

This is the third appearance of this case in this court. All three appeals have tested the legality of the Bordon's sentences. This third appeal follows two prior vacations and remands. Today we affirm that the Bordon's sentences were

lawfully imposed.

Yet, ironically, after the third appeal was filed in this court, the Supreme Court held that sentences such as these were unlawful.  United States v. Booker, 543 U.S. ___, 125 S. Ct. 738, 764 (2005).  In supplemental authority and at oral argument, the Bordons offered Booker as support that they were unlawfully sentenced.

Based upon the doctrine of stare decisis, I am convinced that our court is correct in holding that the Bordons cannot now bring Booker to our attention.  The Bordons should have claimed relief under Booker – before Booker was decided!

For this precedent I am sorry.  I confess that this feeling has long and deep roots.  See McGinnis v. Ingram Equip. Co., Inc., 918 F.2d 1491, 1498-1501 (11th Cir. 1990) (Hill, J., dissenting).  In McGinnis, I probably said all that I needed to say on this subject.  I won't repeat it here.  Id.

I should like to think that a court would want to correct an erroneous sentence of incarceration – if an efficient and prudential method could be devised to do so.  We must feel that we cannot.  Yet, the other circuits in this country seem to be doing so – and surviving!

We hold steadfastly to our precedent.  That is worthwhile conduct and procedure.  Stare decisis is an important doctrine.  But I trust that, from time to

time, it might be tempered with <u>fiat justitia ruat coelum</u>.[5]

I reluctantly concur.

---

[5] Let justice be done though the heavens will fall.

In <u>Hampton v. City of Jacksonville, Fla., et al.</u>, 304 F.2d 320, 330 (5th Cir. 1962), Chief Judge Tuttle quoted Justice Logan Bleckley of the Supreme Court of Georgia in <u>Ellison v. Georgia R.R. Co.</u>, 87 Ga. 691, 696, 13 S.E. 809 (1891), as follows: "When an error . . . competes with truth in the struggle for existence, the maxim for a supreme court, – supreme in the majesty of duty as well as in the majesty of power, – is not stare decisis, but fiat justitia ruat coelum."