610 So.2d 428 (1992)
Richard L. DUGGER, etc., Petitioner,
v.
Wiley Jerome GRANT, Respondent.
No. 78844.
Supreme Court of Florida.
December 10, 1992.
Rehearing Denied January 20, 1993.
Elaine D. Hall, Asst. Gen. Counsel, Dept. of Corrections, Tallahassee, for petitioner.
Sharon Bradley of Daley & Miller, Tallahassee, for respondent.
OVERTON, Justice.
This cause is before us on a petition to review Dugger v. Grant, 587 So.2d 608 (Fla. 1st DCA 1991), in which the district *429 court certified the following question as being one of great public importance:
MAY THE DEPARTMENT OF CORRECTIONS RELY ON INFORMATION TAKEN FROM AN ARREST REPORT WHICH IS INCLUDED IN THE [PRESENTENCE INVESTIGATION REPORT] AS THE SOLE BASIS FOR DETERMINING AN INMATE'S ELIGIBILITY FOR PROVISIONAL CREDITS PURSUANT TO SECTION 944.277, FLORIDA STATUTES[?]
Id. at 610. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the affirmative and quash the decision below.[1]
The relevant parts of section 944.277, Florida Statutes (1989), read as follows:
(1) Whenever the inmate population of the correctional system reaches 97.5 percent of lawful capacity as defined in s. 944.096, the Secretary of Corrections shall certify to the Governor that such condition exists. When the Governor acknowledges such condition in writing, the secretary may grant up to 60 days of provisional credits equally to each inmate who is earning incentive gain-time, except to an inmate who:
(a) Is serving a sentence which includes a mandatory minimum provision for a capital offense or drug trafficking offense and has not served the number of days equal to the mandatory minimum term less any jail-time credit awarded by the court;
(b) Is serving the mandatory minimum portion of a sentence enhanced under s. 775.087(2);
(c) Is convicted, or has been previously convicted, of committing or attempting to commit sexual battery, incest, or a lewd or indecent assault or act;
(d) Is convicted, or has been previously convicted, of committing or attempting to commit assault, aggravated assault, battery, or aggravated battery, and a sex act was attempted or completed during commission of the offense;
(e) Is convicted, or has been previously convicted, of committing or attempting to commit kidnapping, burglary, or murder, and the offense was committed with the intent to commit sexual battery;
(f) Is convicted, or has been previously convicted, of committing or attempting to commit false imprisonment upon a child under the age of 13 and, in the course of committing the offense, the inmate committed aggravated child abuse; sexual battery against the child; or a lewd, lascivious, or indecent assault or act upon or in the presence of the child; or
(g) Is sentenced, or has previously been sentenced, under s. 775.084, or has been sentenced at any time in another jurisdiction as a habitual offender.
(h) Is convicted, or has been previously convicted, of committing or attempting to commit assault, aggravated assault, battery, aggravated battery, kidnapping, manslaughter, or murder against an officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9) or against a state attorney or assistant state attorney.
(i) Is convicted, or has been previously convicted, of committing or attempting to commit murder in the first, second, or third degree under s. 782.04(1), (2), (3), or (4).
(2) The secretary's authority to grant provisional credits in increments not exceeding 60 days will continue until the inmate population of the correctional system reaches 97 percent of lawful capacity, at which time the authority granted to the secretary will cease, and the secretary shall notify the Governor in writing of the cessation of such authority.
In addressing the certified question, it is important to note that the provisional credits under this section are awarded solely for the purpose of controlling prison overcrowding and are permissive, rather than mandatory, in nature. As indicated above, section 944.277 is implemented only when *430 the inmate population reaches 97.5 percent of the lawful prison capacity. When that occurs, the statute directs the Secretary of Corrections (the Secretary) to notify the governor that such condition exists and then, after the governor acknowledges the condition in writing, the statute states that the Secretary may, with certain enumerated exceptions, grant up to sixty days of provisional credits to certain inmates.
Section 944.277 is distinctive from the traditional gain-time statute because its purpose is entirely administrative and it was not enacted as an inmate benefit. As we explained in Dugger v. Rodrick, 584 So.2d 2, 4 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992):
The sole purpose of the early-release statutes is to provide a temporary mechanism to alleviate the administrative crisis created by prison overcrowding while continuing to protect the public from violent offenders. The statutes, procedural in nature, are not directed toward the traditional purposes of punishment.
The award of provisional credits is a procedure utilized by the Department of Corrections to reduce prison population and is not a substantive matter of punishment or reward.
In Rodrick, we distinguished good time "gain time" credit from provisional credits by stating:
Both basic and incentive gain time relate to the sentence imposed, and a release date reduced by these awards can be reasonably predicted, based upon length of the term meted out. Basic gain time is applied as a lump-sum award to reduce the overall length of sentence the day the prisoner enters the prison gates. Though not necessarily a part of the sentence in a technical sense, the award of basic gain time is a quantifiable determinant of a prisoner's overall term, which ... may operate as a "factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Weaver [v. Graham], 450 U.S. 24, [32, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981)]. The potential to earn incentive gain time for labor performed and constructive activities, although contingent upon performance and good behavior, is also quantifiable based upon length of sentence imposed. Thus, to the extent that these two types of "gain time" operate in tandem with the length of sentences imposed, they affect the "quantum of punishment" which attaches at the time the crime is committed.
Conversely, the eligibility and receipt by a prisoner of provisional credits for prison overcrowding, regardless of what they are called, is in no way tied to overall length of sentence. The need for and application of such awards are contingent upon many outside variables that contribute to prison overcrowding. There is no relationship to the original penalty assigned to the crime at the time it was committed nor to the ultimate punishment meted out.
584 So.2d at 4.
In this case, Wiley Jerome Grant was initially charged with sexual battery and burglary of a dwelling. At trial, the jury found him guilty of burglary but rejected the sexual battery charge and returned, instead, a verdict for the lesser-included offense of battery. Grant was given a ten-year sentence for the burglary conviction and a concurrent one-year sentence for the battery conviction. Subsequently, the prison population reached 97.5 percent, and the Secretary, in determining whether Grant would be an inmate entitled to provisional credits under section 944.277, considered the following information in his presentence investigation report (PSI):
Pertaining to this particular incident the offense report shows that she [the victim] returned home at approximately 11:00 on 9-2-88. As she opened her front door she felt the door being forced open. The defendant entered her apartment stating that he was going to "Screw her." He then undressed her. She attempted to get away but could not push him away. He ordered her to the bedroom and she started to yell and scream hoping that someone would hear her. He started pushing her around and she did not resist because she knew that *431 she would "Suffer the brunt of his anger" if she did.
He tried to pluck her pubic hairs with a pair of tweezers so that she would be embarrassed to be with other men. He then told her that he loved her. He continued to attempt to have sexual intercourse with her both vaginally and anally. He slapped her several times when she would not get into some positions he wanted to try. He threatened to kill her and then himself by slashing their throats. When the defendant had sexual intercourse with her he urinated inside her and continued to urinate on the bed and the cedar chest at the foot of the bed. She was then allowed to take a shower. During the sexual attacks the victim related that the defendant told her that he was going to pinch her breasts off. The report indicated that this was evident by the bruising on her breasts.
Based on this information, the Secretary determined that he was prohibited from awarding provisional credits to Grant given the two exceptions under section 944.277 that prohibit an award of provisional credits when an inmate:
(d) Is convicted ... of committing ... battery .. . and a sex act was attempted or completed during commission of the offense; [or]
(e) Is convicted ... of committing ... burglary .. . and the offense was committed with the intent to commit sexual battery.
§ 944.277(1), Fla. Stat. (1989).
After provisional credits were denied, Grant petitioned the circuit court for a writ of mandamus to require the Secretary to grant him credits under the statute. The circuit court granted the writ on the grounds that the Secretary had improperly considered the evidence contained in Grant's PSI in determining the provisional credits award. On appeal, the First District Court of Appeal affirmed. The district court determined that an inmate can be denied provisional credits only if there is some evidence that the inmate has been found to have fallen into one of the statutory categories that specifically provides for denial of credits. In applying that standard to the instant case, the district court held that no such evidence existed because the jury had specifically rejected the events set forth in the PSI. In so ruling, however, the district court stated that it was not unmindful of the Secretary's need to rely on PSI reports to realistically perform his statutory duties.
In its petition for review, the Secretary challenges the district court's decision, asserting that the information contained in the PSI is administratively essential to implement the provisions of section 944.277. The Secretary notes that inmates who have been convicted of a sexual battery or incest are automatically excluded from consideration for provisional credits by another distinct provision, subsection (c) of the statute. When an inmate has not been convicted of a crime of a sexual nature, the Secretary believes that, in applying subsections (d) and (e), he has a statutory duty to look to additional documents, such as the inmate's PSI, to establish whether a sex act was attempted or completed during the commission of the crime. The Secretary explains that the elimination of his ability to use additional documents such as PSI reports would, for all practical purposes, prevent him from administering the provisional credits in accordance with the express provisions of the statute.
Grant's counsel does not dispute the Secretary's argument and, in fact, acknowledges that it is appropriate for the Secretary to use PSI reports and police report information when making provisional credit determinations.[2] However, counsel contends *432 that in this situation such information cannot be used because the circumstances set forth in the PSI were contradicted by the jury verdict. We disagree with this interpretation of the statute.
The legislature, under section 944.277, has clearly established a policy of prohibiting the grant of provisional credits to any inmates who have been convicted of sexual offenses. See § 944.277(1)(c). For those inmates who have committed or attempted sexual acts in the course of certain other enumerated nonsexual offenses such as battery, the Secretary has the duty to evaluate the record of each individual inmate to determine whether "a sex act was attempted or completed during the commission of the nonsexual offense." The legislature, in effect, made a major policy decision that these administrative credits to reduce inmate population must not be given to any inmate who has committed or attempted any type of sexual act during the criminal offense for which the inmate is incarcerated regardless of whether that sexual act itself constituted a crime. To implement that policy, it is clear that the Secretary must have access to all information of record regarding an inmate's offense when making such a provisional credit determination.
As stated previously, section 944.277 is permissive, rather than mandatory, and is strictly an administrative mechanism to relieve prison overcrowding. Because provisional credits are solely implemented to relieve prison overcrowding, are in no way tied to an inmate's overall length of sentence, and create no reasonable expectation of release on a given date, no substantive or procedural "liberty" due process rights vest in an inmate under the statute. We note, however, that, even if section 944.277 did vest due process rights in an inmate, the level of evidence necessary to deny provisional credits would not rise to that necessary to convict; nor would the Secretary's determination necessarily be subject to second-guessing on review. As the United States Supreme Court held in Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985), only a "modicum" of evidence is necessary to support an administrative decision regarding inmates even when such a decision does involve due process rights.[3]
We find that the Secretary, in his discretion under the statutory scheme has the authority to examine the entire record, including the PSI, to determine whether an inmate has committed or attempted a sex act. In this case, we conclude that the Secretary could consider Grant's conduct to be that of committing or attempting a sex act even though the jury found him guilty of a battery rather than a sexual battery under the evidence and even though Grant's conduct may not have risen to the level of a criminal offense. We emphasize that section 944.277 is purely an administrative procedural mechanism in which no due process rights are implemented. Consequently, we hold that provisional credit awards under the statute are properly within the Secretary's discretion and that presentence investigation reports in the record may be used by the Secretary in making that discretionary determination.
It is so ordered.
McDONALD, GRIMES and HARDING, JJ., concur.
KOGAN, J., dissents with an opinion, in which BARKETT, C.J., and SHAW, J., concur.
KOGAN, Justice, dissenting.
It is well settled that an inmate has no substantive right to the provisional credits *433 encompassed by section 944.277. Dugger v. Rodrick, 584 So.2d 2 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992). However, once the Department of Corrections elects to implement provisional credits the Department is instructed to grant them, "equally to each inmate who is earning incentive gain-time" unless that inmate falls into one or more of ten enumerated classifications. § 944.277(1) Fla. Stat. (1989). The implementation of the provisional credit scheme contained in section 944.277 creates a liberty interest in those who qualify for these provisional credits. Art. I, §§ 2, 9, Fla. Const. Therefore, when the Department is required to review evidence in determining whether or not an otherwise qualified inmate falls into one of the ten enumerated classifications, it must afford that inmate the protection of procedural due process.
This is not to say that the department must provide every inmate an opportunity to be heard as to each and every one of the enumerated classifications, but only as to those classifications that require the Department to independently review evidence and determine whether the inmate falls into the classification or not. Whenever the Department is required to rely on evidence or findings of fact that are not contained within the four corners of the sentencing order, it must give the inmate notice and the opportunity to respond to this evidence. Obviously, when the evidence or findings of fact appear in the sentencing order, or when the facts in the report are read to the defendant who admits the truth of the allegations in the report, the inmate's procedural due process rights have already been protected by the earlier trial proceedings themselves. The problem only arises when, as in the instant case, the Department is required to make its own independent evidentiary determination.
In cases like the present one a defendant may have been convicted of the enumerated crime with no mention or finding on the requisite `sex act' being discussed or made at trial. Under these circumstances the Department must allow the inmate an opportunity to rebut the evidence that the crime involved a `sex act' that was attempted, completed, or intended. See § 944.277(1)(d), (e) Fla. Stat. (1989) (requiring the Department to make such determinations). To allow the Department to make this determination alone, without affording the inmate notice and an opportunity to be heard, is a violation of the inmate's procedural due process rights protected under both our state and federal constitutions. U.S. Const. amend XIV, § 1; Art. I, §§ 2, 9, Fla. Const.; cf. Rankin v. Wainwright, 351 F. Supp. 1306 (M.D.Fla. 1972); Bretti v. Wainwright, 360 So.2d 1299 (Fla. 1st DCA 1978). I agree that the Department may rely on the presentence investigation report when assigning provisional credits, provided these minimum due process rights are observed.
BARKETT, C.J., and SHAW, J., concur.
NOTES
[1] We note that the respondent, Wiley Jerome Grant, died in November 1991; thus, the certified question in this case is moot as it applied to him. However, we accept jurisdiction because the certified question is one of great public importance and is likely to recur. See Holly v. Auld, 450 So.2d 217 (Fla. 1984).
[2] We note that the legislature, based on the district court's decision in Grant, 587 So.2d 608, specifically amended section 944.277, effective July 6, 1992, to give the Secretary authority to rely on PSI reports in making provisional credit determinations. The following provision was added to section 944.277:

In making provisional credit eligibility determinations, the department may rely on any document leading to or generated during the course of the criminal proceedings involving the inmate, including, but not limited to, any presentence or postsentence investigation or any information contained in arrest reports relating to circumstances of the offense.
Ch. 92-310, § 12, Laws of Fla.
[3] In Hill, the United States Supreme Court was evaluating the level of evidence necessary to deny good time credit, the denial of which implicates due process. There the Court noted that "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." 472 U.S. at 456, 105 S.Ct. at 2774 (citations omitted, emphasis added).