*1155 B.L. THOMAS, J.
Petitioner is a state prisoner assigned to Close Management residential status for spitting in the face of a psychiatrist attempting to interview him. The Department' form reporting the incident stated that Petitioner repeatedly cursed the doctor and staff, and when ordered to leave the doctor’s office, Petitioner then stood up and spat in the doctor’s face, requiring Department security staff to escort Petitioner out of the office and place him in confinement pending resolution of the incident. Based on the incident, a disciplinary report was filed against Petitioner, and a referral for Close Management assignment was issued. Close. Management is a prison classification imposing more restrictive conditions promulgated to ensure institutional order and safety in Department of Corrections’ facilities. Petitioner challenged his assignment- to Close Management by filing a petition for writ of habeas corpus.
Claims filed by state prisoners challenging Close Management classification do not assert that the inmate is entitled to release from incarceration but only assert a right to remain in the prison’s general population; therefore, such claims do not implicate a constitutionally-protected liberty interest. Because our prior decisions holding to the .contrary relied on an analytical foundation built on Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), rejected more than 20 years ago by the United States Supreme Court in Scmdin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), and because habeas corpus- review of such claims does not accord the proper deference due the Executive Branch, which must carry out the daunting and dangerous task of ensuring the safety of state prisons, we recede from prior decisions of this court which hold that challenges to Close Management- housing assignments may be asserted by petition for writ of habeas corpus. See Magwood v. Tucker, 98 So.3d 725 (Fla. 1st DCA 2012) (holding that prisoner’s challenge to Close Management classification, based on disciplinary report which was challenged by petition for writ of mandamus in the Circuit Court for Leon County, must be considered by petition for writ of habeas- corpus in the Circuit Court for Santa-Rosa County in which prisoner was incarcerated); Kendrick v. McNeil, 6 So.3d 657 (Fla. 1st DCA 2009) (citing precedent dating back to 1987 holding that circuit court improperly treated claims challenging Close Management classification as arising in mandamus rather than habeas corpus, and ordering that hens placed on inmate’s account be refunded, as no fee could be charged for filing petition for writ of habeas corpus, but otherwise denying certiorari relief)'; Thompson v. Dugger, 509 So.2d 391, 392 (Fla. 1st DCA 1987) (“Although an inmate has no constitutional due process right to notice and a hearing before’ his confinement status is changed, such right may be created by state law.”).
We now hold that a prisoner’s claim that he has been improperly' assigned to Close Management classification does not state a claim for relief by writ of habeas' corpus under Article I, section 13 of the Florida Constitution or under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Thus, we hold that such a claim can only be considered by petition for writ, of mandamus, asserting that the Department has not complied with its own Close Management procedures and filed in the Second Circuit Court in Leon County, as are other claims challenging disciplinary reports issued in state prisons. See generally Holcomb v. Dep’t of Corrections, 609 So.2d 751 (Fla. *1156 1st DCA 1992) (holding that circuit court must first evaluate á prisoner’s petition to determine sufficiency of allegations, and if insufficient, court may deny relief or dismiss insufficient claims; where petition alleges sufficient claims, court must issue order to show cause why. requested relief should not be granted, and once issued, order to show cause “becomes in all respects the complaint,” and response must admit or, deny factual allegations); . see, e.g., State ex. rel. Haley v. Groose, 873 S.W.2d 221, 223 (Mo.1994) (treating petition for writ of habeas corpus challenging placement in protective custody for refusing to submit to DNA testing as petition for writ of mandamus, ordering prison to conduct review hearing, and noting that because prisoner’s claim failed to allege cruel and • unusual punishment, “habeas corpus is pot available to attack the conditions of his confinement”). Further review of circuit court orders in cases involving challenges to Close Management assignment shall be by second-tier certiorari review, in this court. Sheley v. Fla. Parole Comm’n, 720 So.2d 216 (Fla.1998); Plymel v. Moore, 770 So.2d 242 (Fla. 1st DCA 2000). In addition to our holding today, we also certify conflict with the Fifth' District Court of Appeal in Holland v. State, 791 So.2d 1256 (Fla. 5th DCA 2001), which cites prior decisions. of this court from which we now recede.

Background

Petitioner is serving a 30-year prison sentence for - his conviction of robbery. While serving his prison sentence, he received a disciplinary report for the actions noted above, The Department of Corrections (the Department) found Petitioner guilty of Department rules, placed him in disciplinary confinement, and revoked 364 days of gain time. In addition, the Department issued a referral which reassigned Petitioner to Close Management I housing classification and removed him from the general population, based on committing an act “causing injury or an act which could have resulted in injury to another.” After Petitioner challenged the referral, asserting that the reassignment did not comply with Department rules, the Department conducted a multi-step review, first considering Petitioner’s arguments at the institutional level and culminating in final review by the State Classification Officer in Department headquarters. Affirming the institutional staff’s referral, the State Classification Officer upheld the decision which assigned Petitioner to Close Management I housing, based on Petitioner’s act “which could have resulted in injury to another.”
In his petition for writ of habeas corpus filed in the Eighth Judicial Circuit, Petitioner essentially argued that he could not be assigned to Close Management I housing, citing Johnson v. State, 858 So.2d 1071 (Fla. 3d DCA 2003), which held that spitting in a law enforcement officer’s face was not a forcible felony involving violence as defined under the Prison Releasee Reof-fender Act. Petitioner never denied the underlying act of spitting in the victim’s face. Petitioner cited authorities from the United States Supreme Court and this court, asserting that because he had a liberty interest in remaining in the general prison population, due process required the circuit court to overturn the Department’s administrative action assigning him to Close Management I housing by issuing a writ of habeas corpus, ordering that Petitioner be “released” back into the general population of the prison.
The circuit court denied relief without requiring a responsive pleading from the Department, stating in its order:
... Petitioner has failed to demonstrate that he is entitled to due process protection in regard to the Department’s *1157 decision to place him ... in [Close Management]. Nothing in the record demonstrates that Petitioner has a protected liberty interest in remaining free from a [Close Management] custody classification. [The Department’s] decision to place Petitioner in a particular confinement classification is a discretionary one that is necessary to maintain the order of the institution and the safety of the inmates and staff. The conditions of confinement in [Close Management] fall within the expected parameters of Petitioner’s court-imposed prison sentence, and do not impose an “atypical or significant hardship” on Petitioner “in relation to the ordinary incidents of prison life.” See Sandin v. Conner, 515 U.S. 472, 483-86, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). '
Moreover, [Close Management] supervision is not the same as disciplinary confinement and is not imposed as a .penalty for a disciplinary infraction. Close management is a tool utilized by corrections personnel to maintain security and order in the institution and to facilitate effective management of the institution. See F.A.C. 33-601.800(3)(a). Petitioner has failed to demonstrate that [the Department] abused its discretion in finding that his current [Close Management] classification status appropriately addressed potential security concerns stemming from his behavior.
This Court finds that Petitioner has failed to assert a prima facie case for a writ of habeas corpus.
To challenge the circuit court’s ruling, Petitioner sought a writ of certiorari in this court. Pursuant to this court’s order, the clerk of the circuit court was directed to transmit the record of the proceedings, and because the order below denied a petition for writ of habeas corpus, we directed that “petitioner is entitled to preparation of the.record on appeal without charge.” This .court further ordered the Secretary of the Department to show cause why the petition for writ of certiorari should not be granted. ,
' This court subsequently ordered this case to be heard en banc regarding “whether the court should recede from decisions holding that an inmate seeking release from close management into the general prison population* is entitled to proceed through a petition for writ of ha-beas corpus. See, e.g. Kendrick v. McNeil, 6 So.3d 657 (Fla. 1st DCA 2009).” Counsel was appointed by the court to represent Petitioner.[1] This court struck all previous pleadings filed by the parties to allow Petitioner and the Department to address the question presented on en banc review.

Analysis

1. Close Management Classification and Procedures
Close Management is a prison classification that confines a state prisoner “apart from the general population, for reasons of security or- the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others.” Fla. Admin. Code. R. 33-601.800(l)(d). The most restrictive level of Close Management is CM I, which places an inmate in single-cell housing; the least restrictive level- is CM III. Varying restrictions of an inmate’s *1158 privileges and custodial status apply in the classification.
When assigned to Close Management housing, the inmate is visited regularly by Department staff, and irregularly by other staff, to ensure the inmate’s safety and health. Fla. Admin. Code. R. 33-601.800(15). Daily visits are conducted by medical personnel, the institution’s housing supervisor, and the officer supervising the correctional staff; weekly visits are conducted by the warden and assistant wardens, the security chief, and a classification officer. A Chaplain also visits weekly, and can visit more often if requested and if the Chaplain’s schedule permits.
Close Management inmates may possess certain personal items, including hygiene items, electronic devices for listening to music, religious literature, personal property that does not pose security risks, writing paper, stamps, envelopes, and security pens to facilitate correspondence. Close Management inmates may conduct their legal affairs, have access to approved reading material and borrow library books, subscribe to magazines and newspapers, and use in-cell education and wellness opportunities. If the Close Management inmate does not violate a significant institutional rule, they may conduct bank transactions and order from the canteen. Fla. Admin. Code. R. 33-601.800(10)(g).
Close Management inmates may have visitors by appointment. In addition, they are allotted six hours of outdoor exercise each week. Inmates assigned to CM II and CM III may obtain work assignments. Fla. Admin. Code. R. 33-601.800(10)(m) & (13). To provide incentive for improved behavior, privileges may increase as the inmate progresses to more lenient Close Management status. Fla. Admin. Code. R. 33-601.800(11).
The Department’s decision to assign .an inmate to Close Management is administrative, involving multiple internal decisions by the Department, with each requiring oversight. First, a member of the institution’s Classification Team recommends such placement. Fla. Admin. Code R. 33-601.800(3)(c). The Classification Team then reviews this recommendation and conducts a mental health assessment before making a recommendation to the State Classification Officer at the Department’s central office in Tallahassee. Fla. Admin. Code R. 33-601.800(3)(g). The State Classification Officer reviews inmate classification decisions, and may modify or reject the Classification Team’s recommendation. Fla. Admin. Code. R. 33-601.800(l)(q). Even if the State’s Classification Officer approves the Close Management assignment, the Department’s internal review continues.
During the first 60 days of Close Management, the inmate’s placement is reviewed weekly by a member of the institution’s Classification Team; following that, review is monthly. Fla.' Admin. Code. R. 33-601.800(16)(a). After six months, the inmate’s Classification Officer interviews and assesses the inmate, the previous placement decision, and whether a change in status is advisable. Fla. Admin. Code. R. 33-601.800(16)(c). In addition, the State’s Classification Officer interviews the inmate no less often than every six months to determine whether the status remains appropriate or must be modified, including whether the inmate should be reassigned to the general population. Fla. Admin. Code R. 33-601.800(16)(e).
2. Judicial Review of Close Management Inmate Assignments
Petitioner asserts that this court should quash the lower court’s order denying the petition for wit of habeas corpus and order that the Department reassign him to the general prison population. Petitioner *1159 argues that this court should not recede from its decisions allowing prisoners to challenge decisions of the Department assigning inmates to Close Management through a petition for writ of habeas corpus.
As Petitioner asserts in his petition, the ultimate question at issue is whether “placement in close management represents substantially more ‘atypical and significant hardships’ in relation to the ordinary incidents of prison life,” thus entitling an inmate to due process, a violation of which may be asserted by petition for a writ of habeas corpus. To answer this question, we first consider important foundational principles regarding challenges to decisions by prison officials to manage and ensure the safety of prisons.
First, we recognize that courts must give great deference to prison officials who must carry out the dangerous task of managing prisons. The United States Supreme Court has long recognized that
[rjunning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.
Turner v. Safley, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Most pertinent to our decision here is the initial question of whether prisoners in Florida have a protected liberty interest in remaining in the general population, thus necessitating a determination of whether a decision removing a prisoner from the general population for reassignment to Close Management implicates due process requirements. See Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293., 132 L.Ed.2d 418 (1995). If an inmate has no such liberty interest implicating due process demands, then it is more logical for this court to reevaluate its prior case law holding that judicial challenges to assignments to Close Management sound in habeas corpus rather than by writ of mandamus. If a liberty interest is not at stake, judicial review of the Department’s decision to assign an inmate to Close Management would be more appropriately considered as an appeal of an administrative decision, rather than a claim that a person is being illegally detained, and thus entitled to assert a claim by writ of habeas corpus. ■
In Sandin, the United States Supreme Court addressed whether a state prisoner incarcerated in the Hawaiian Department of Corrections possessed a liberty interest to remain free from disciplinary confinement and thus possessed a right to the federal Due Process Clause procedural requirements of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 93, 5 (1974). Sandin, 515 U.S. at 474, 115 S.Ct. 2293. Hawaiian inmate, DeMont Conner was a state prisoner sérving a sentence of 30 years to life for numerous state crimes including murder, kidnapping, burglary, and robbery. Id. at 475, 115 S.Ct. 2293. While in prison, Conner was charged with misconduct for using abusive language when- prison officials conducted an intrusive search of his person. Id. During the disciplinary hearing, prison officials refused Conner’s request to call witnesses, citing their unavailability. Id. Conner was found guilty and assigned to 30 days of “disciplinary segregation.” Id. at 475-76, 115 S.Ct. 2293. An official later granted Conner’s internal appeal and deleted the charge after Conner had served the confinement period. Based on the prison official’s actions, Conner filed suit under 42 United States Code Annotated section *1160 1983 in the District Court of Hawaii. The district court granted the State’s motion for summary judgment, but the Ninth Circuit Court of Appeals reversed. Conner v. Sakai, 15 F.3d 1463 (9th Cir.1993). ■ Relying on the United • States Supreme Court decision in Hewitt, the Ninth Circuit held that Conner .had a liberty interest in remaining in the general population and had raised a genuine issue of material fact under Wolff by adequately alleging Hawaiian prison officials had failed to accord him the opportunity to call witnesses, Id. at 1466-67. . /
• In reversing the Ninth Circuit, the United States Supreme Court overruled its prior precedent in Hewitt and its progeny in which the Court looked to state law or mandatory administrative regulations to consider whether the State had created a constitutionally-protected liberty interest, triggering due process requirements, Instead, the Supreme Court announced that “these [liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Sandin, 515 U.S. at 484, 115 S.Ct. 2293 (citations omitted; emphasis added). The Court left open the possibility that states could create liberty interests which triggered due process protections, such as in Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), where the state’s mandatory language regarding parole eligibility established such a liberty interest, and it recognized that; as in Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), some prison regulations authorized involuntary! administration of anti-psychotic medication, or - Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), which authorized involuntary transfer of a state prisoner to a mental hospital, in which such unusual prison regulations, by their very nature, invoked due process protections. But the decision in Sandin clearly announced that any prison regulation which did not impose an atypical hardship on state prisoners would not implicate due process protections, and that a state prisoner’s interest in avoiding more adverse prison consequences was expected to occur following a lawful .conviction and sentence, and was not to- be equated with state laws addressing “rights and remedies available to the general public.” Sandin, 515 U.S. at 481, 115 S.Ct. 2293.
The Supreme Court anchored its new approach to state prisoner due process claims on issues of “real substance” rather than on prison regulations designed to help guide correctional staff. In its overview of prior precedent, the Court noted that in Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), it recognized that state prisoners who were transferred to a more secure prison with “less favorable” conditions did not implicate substantive due process liberty interest rights: “The Court began [in Meaehum ] with the proposition that the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner.” Sandin, 515 U.S. at 478, 115 S.Ct. 2293 (emphasis added).
The Sandin Court then turned to Hewitt, noting that even in that decision, the Court did not find a liberty interest implicated in a state prisoner’s right to remain in the general population: “[the Hewitt Court] then concluded that the transfer to less amenable quarters for nonpunitive reasons was ‘ordinarily contemplated by a prison sentence.’” Sandin, 515 U.S. at *1161 480, 115 S.Ct. 2298 (quoting Hewitt, 459 U.S. at 468, 103 S.Ct. 864). But the San-din Court held that its prior methodology for determining the existence of a liberty interest used in Hewitt was logically flawed, as it looked to the prison regulations themselves, rather than whether the prisoner’s confinement in administrative segregation actually imposed a “ ‘grievous loss of liberty’ retained even after sentenced to terms of imprisonment.” Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 88 L.Ed.2d 484 (1972)). In other .words, unlike Morrissey, which involved the revocation of parole, a real deprivation of actual liberty, the Sandin Court criticized its earlier precedent in Hewitt, which .focused on the nature of the prison regulation rather than the question of whether there was an actual loss of liberty.
Thus, under the logic of Sandin, it is unlikely that Petitioner’s claim that he was wrongfully assigned to Close Management implicates a substantive due process liberty interest, primarily because Close Management does not, on its face, constitute a “grievous loss of liberty,” as a prisoner sentenced to 30 years’ imprisonment has already lost his or her liberty. In addition, as enforced today, removing a prisoner who has committed a disciplinary infraction from the general population is not an “atypical and significant hardship” of normal existence in prison; In fact, such an assignment is not dissimilar to a transfer from a less-secure to a more-secure institution, where a prisoner must adapt to more burdensome and strict living conditions. To quote the United States Supreme Court, “Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.” Sandin, 515 U.S. at 485, 115 S.Ct. 2293. ■
• As noted, the Supreme Court in Sandin rejected the logic of Hewitt, which found that state prison regulations, much like those involved here, established a protected liberty interest. - The Sandin Court unequivocally held that such regulations are laudatory and cannot be used against the state to require it to meet more stringent procedural requirements before taking punitive action to confine a disorderly prisoner away from the general population:
Hewitt has produced at least two undesirable effects. First, it creates disincentives for States to codify management procedures in the interest of uniform treatment. Prison administrators need be concerned with the safety of the staff and inmate population. Ensuring that welfare often' leads prison administrators to curb the discretion of staff on the front line who daily encounter prisoners hostile to the authoritarian structure of the prison environment. Such guidelines are not set forth solely to benefit the prisoners. They also aspire to instruct .subordinate employees how to exercise discretion vested by the State in the warden, and to confine the authority of prison personnel in order to avoid widely different treatment of similar incidents. The approach embraced by Heioitt discourages this desirable development: States may avoid the creation of'“liberty” interests by having scarcely any regulations, or by conferring standardless discretion on correctional personnel.
Second, the Hewitt approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.
Sandin, 515 U.S. at 482, 115 S.Ct. 2293 (emphasis, added). Both of these logical *1162 observations made by the United States Supreme Court in 1995 support our decision today to recede from prior decisions which allow Close Management decisions to be challenged by writ of habeas corpus, which encourages excessive state judicial oversight and interference with prison management, without any real substance at stake or real benefit conferred on state prisoners while creating a risk of diminishing state prison security and safety.
In 1987, this court relied on the logic of Hewitt in discussing why a claim challenging assignment to Close Management would be properly heard in habeas corpus. In Thompson v. Dugger, 509 So.2d 391 (Fla. 1st DCA 1987), we stated: “Although an inmate has no constitutional due process right to notice and a hearing before his confinement status is changed, such right may be created by state law.” 509 So.2d 391, 392 (Fla. 1st DCA 1987) (citing Hemtt). This court granted the writ of habeas corpus and required an evidentiary hearing in the circuit court, based on the Department’s own internal rules regarding the notice to be provided to the inmate. Thus, this court held that the Department’s internal rules created a right to due process before the inmate could be assigned to Close Management. While its logic was not explicit, this court’s decision in Thompson was, by necessity, based on the principle that because the State had created a liberty interest in remaining in the general population, by the Department’s rules, the inmate was entitled to assert a constitutional claim that was properly heard by writ of habeas corpus. This purported constitutional claim required an evidentiary hearing to determine whether the inmate’s rights, created by state law, had been protected. Of course, if there is no right to remain free from Close Management, then the underlying premise of Thompson was flawed.
This court previously followed this same logic in Granger v. Florida State Prison, 424 So.2d 937 (Fla. 1st DCA 1983), where we held that a prisoner possessed a liberty interest, created by state law, in remaining in the general population; thus, the prisoner was entitled to a writ of habeas corpus to challenge the Department’s alleged failure to follow its internal rules. Interestingly, the Department argued in Granger, to no avail, that the prisoner did not have a liberty interest:
[W]e reject the State’s contention that the denial of Granger’s petition should be affirmed on the ground that he has failed to assert a sufficient liberty interest. While it is true that due process ■attaches only to those rights created by the State, it cannot be said that the State has not created a liberty interest in being free from arbitrary transfers from the general prison population to administrative segregation. See Parker v. Cook, 642 F.2d 865 (5th Cir.1981); and section 33-3.081, Fla. Admin. Code.
424 So.2d. at 938. But we hold today that the Department’s position was correct. The Department did not “create” a protected substantive liberty interest under the federal Due Process Clause, or state constitutional provisions, by simply enacting rules that guide its decision to confine prisoners in Close Management, based on misconduct that threatens the safety and security of the prison’s staff, other inmates, and visitors.
We now recognize that prisoners do not possess a constitutionally protected substantive liberty interest in remaining in the general population, either under the terms of the federal Due Process Clause or in the Close Management regulations enacted by the Department itself. As the Supreme Court recognized in Sandin, it is illogical to penalize a state agency, which enacts rules to ensure the uniform applica *1163 tion of prison management of inmates, by-subjecting the agency to heightened judicial scrutiny triggered under the Due Process Clause. Rather, the more logical approach properly defers to the difficult and dangerous challenges faced by the'Executive Branch in managing state prisoners, by providing that judicial review of challenges to Close Management is conducted not by writ of habeas corpus — which necessarily implies that a prisoner’s right to immediate release is at stake and that heightened and less deferential review is required — but instead to conduct judicial review by the extraordinary writ of mandamus, in the same manner that challenges to disciplinary reports are filed in the Second Circuit Court in Leon County. See, e.g., Bush v. State, 945 So.2d 1207, 1210 (Fla.2006) (stating “if the prisoner alleges entitlement to immediate release, a petition for writ of habeas corpus is the proper remedy; whereas if the prisoner does not allege entitlement to immediate release, a petition for writ of mandamus is the proper remedy.”) (footnote omitted; emphasis added); Magwood, 98 So.3d 725 (noting that challenge to disciplinary report was properly filed by writ of mandamus in Second Circuit in Leon County, but claim challenging placement in Close Management, which was based on same disciplinary report, was filed by writ of habeas corpus in county in which prisoner was incarcerated). Under our holding today,all claims in this case would be filed in the circuit court in and for Leon County, as would be more logical. This type of judicial review of Close Management would be in the nature of an appeal of the Department’s decision, in which a circuit court may not overturn a Department’s administrative decision of assignment to Close Management, unless the Department’s decision was clearly arbitrary. See, e.g., Sheley, 703 So.2d 1202. As described in She-ley, further review of the Department’s decision may be pursued by very limited “second-tier” certiorari in this court. Id. at 1206.
Habeas corpus, is not the correct remedy to provide to a' state prisoner who cannot make a claim for immediate release. Jones v. Sec’y, Dep’t of Corr., 2015 WL 3952690 (N.D.Fla. June 28, 2015) (dismissing habeas corpus petition, in part, because no constitutional right to due process in disciplinary procedures employed by Department, and disciplinary confinement for 30 days did not deprive prisoner of “liberty,” noting, “ ‘Federal due process does not require that state prison officials strictly comply with administrative regulations governing disciplinary hearings in the prison setting* ” (quoting Hilderbrandt v. Butts, 550 Fed.App’x 697, 700 (11th Cir.2013)), and “ ‘as various circuit courts [of appeal] have held when ruling on an inmate’s claim that he was denied use of a prison’s grievance procedure, an inmate has no constitutionally-protected liberty interest in access to that procedure.’ ” (quoting Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir.2011))); State ex. rel. Haley v. Groose, 873 S.W.2d 221 (Mo.1994) (en banc). Here, Petitioner is not asserting an entitlement to immediate release from incarceration, but only a release from .Close Management. Courts have properly recognized, however, that such a change in incarceration status is only a change in the inmate’s classification,. Lowery v. Lambdin, 687 So.2d 55, 57 (Fla. 4th DCA 1997) (noting that claim challenging Close Management classification was “not truly one for habeas corpus and therefore, [Article I, section 13, Fla. Const., providing for no cost to be charged to consider petition for habeas corpus] has no application.... On remand the trial court may consider whether the petition is properly brought as a habeas corpus.”).
*1164 If it were not for our prior precedent under the liberty interest analysis and logic of Sandin, Petitioner would not be entitled to claim release by writ of habeas corpus, but instead would be required to file a petition for a writ of mandamus, as he can only state a claim in state law, to wit: the Department has somehow failed to- follow its own self-binding procedures. Such a pleading would, by, logic, be filed under mandamus in the Second Circuit Court in Leon, County, the county in which the Department’s headquarters are located. Burgess v. Crosby, 870 So.2d 217, 219 n. 5 (Fla. 1st DCA 2004) (“A petition for writ of habeas corpus ... is properly filed in the county in which the inmate is being detained.' If an inmate challenges a gain time issue, but is not claiming the right to immediate release, a petition for writ of mandamus is filed in the county where the Department of Corrections is headquartered.” (citations omitted)). In' other words, outside of the status of Close Man-agément issues, a prisoner asserting a claim other than entitlement to immediate release would not normally be permitted to state such a claim by petition for writ of habeas corpus in the county in'which he is incarcerated, for the simple reason that the very nature of the 'writ 'is to “test solely the legality of the petitioner’s imprisonment!)]” Sneed v. Mayo, 66 So.2d 865, 869-70 (Fla.1953) (holding “The great [writ] of habeas corpus is a writ of right obtainable under our Constitution by all [persons] who-claim to be unlawfully imprisoned against their will_ The purpose of the writ being to bring the petitioner before a court of competent judicial tribunal in order that inquiry may be made into the legality of his detention ....” (citations omitted)); State ex rel. Hamilton v. Mayo, 123 Fla. 491, 167 So. 34 (1936) (holding “the rule, being well settled that where an application for writ of habe-as corpus is made to this court and, the petition showing on its face -that the alleged detention complained of is in conformity to a valid conviction and sentence, the writ itself may be denied on the face of the showing made ...”). In Sneed, the petitioner asserted that he' had not waived his right to a trial by jury, and the supreme court remanded the claim to the circuit court for an evidentiary hearing. 66 So.2d at 874. In Hamilton, the petitioner claimed he' had been convicted in- a court which lacked “constitutional existence”; the supreme court denied the petition on its face. 167 So. at 35.
Thus, historically, a person seeking relief by writ of habeas corpus is — and by definition must be — asserting that he or she is entitled to immediate liberty and release from unlawful detention. In Brown v. Wainwright, 498 So.2d 679, 679 (Fla. 1st DCA 1986), we held where a petition for writ of habeas corpus “fails to allege that the relief requested would entitle the petitioner to either an immediate release or a new trial, the writ may not be granted.” (Emphasis added.) This is the correct rule of law and the traditional and historical basis for judicial relief by writ of habeas corpus. See also Duncan v. Fla. Parole Comm’n, 939 So.2d 176, 176 (Fla. 1st DCA 2006) (holding that, although “inartfully pled,” prisoner challenging revocation by Parole Commission of his prior conditional release stated claim for relief by writ of habeas corpus requiring circuit court to issue order to show cause); Black v. State, 490 So.2d 1287, 1288 (Fla. 1st DCA 1986) (holding that “initial reason” for denying petition for writ of habeas corpus to appeal denial of writ of mandamus challenging Presumptive Parole Release Date “is that it does not allege that the relief requested will entitle the petitioner to release or a new trial”). But in the area of claims challenging the Department’s decision to change a prisoner’s sta *1165 tus from general population to Close Management, we have departed from these legal principles, in part based- on prior United States Supreme Court precedent now long rejected by that Court.
When the landmark decision of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), issued, the Florida Supreme Court devised a procedure to streamline claims involving alleged violations of the right to counsel under the Sixth Amendment to the United States Constitution. As noted in Baker v. State, when the Florida Supreme Court enacted “Rule 1” (the predecessor to rule 3.850, Florida Rules of Criminal Procedure) to provide an avenue for prisoners to challenge their convictions under Gideon, the rule provided that where this new rule did not provide an adequate remedy, a prisoner could seek relief by petition for writ of habeas corpus “to test the legality of his detention.” 878 So.2d 1236, 1241 (Fla.2004) (quoting In re Criminal Procedure, Rule No: 1, 151 So.2d 634 (Fla.1963)) (emphasis added). Thus, while under certain limited circumstances a prisoner can assert a claim for habeas corpus to challenge a restraint on his or her liberty and proceed outside the normal collateral channel for relief, the rule does not authorize a challenge to the conditions of detention. See, e.g., State v. Bolyea, 520 So.2d 562, 563 (Fla.1988) (holding that postconviction rule is a “procedural vehicle for the collateral remedy otherwise available by writ of ha-beas corpus”). Here, for example, there is no claim that Petitioner is entitled to his “liberty,” but only a claim that he should be allowed to be incarcerated in the general prison population rather than Close Management status.
The “Great Writ” of habeas corpus should be primarily reserved for judicial review of claims of unlawful detention, not claims challenging the type or the. administration of detention, which sound primarily in terms of an administrative appeal. Sneed, 66 So.2d at 869 (holding that habeas corpus “may not be used as a substitute for appeal”). Just as courts have declined to allow the writ to be used as a substitute for direct appeal, in criminal cases, it is not proper, in our view, to allow the writ to be used as a substitute for an administrative appeal challenging an agency’s execution of its administrative duties.
Florida’s organic law mandates that the judiciary accord the most prompt consideration to a person seeking, release by writ of habeas corpus, precisely because the time-honored and historical basis for the writ is to allow a person prompt consideration of a claim that they are being ■held without lawful authority: “The writ of habeas corpus shall be grantable of right, freely and without cost. It shall be returnable without delay[.]” Art. .1, § 13, Fla. Const, -(emphasis added). District courts have enforced this constitutional mandate unequivocally. Bocharski v. Circuit Court of Second Judicial Circuit In and For Leon County, 552 So.2d 946 (Fla. 1st DCA 1989); Bradley v. Sturgis, 541 So.2d 766 (Fla. 5th DCA 1989). But where the claim is not based on the assertion that a person is detained without lawful authority, but. solely on the claim that, administration of the detention is not in accord with the agency’s own rules, then other considerations of judicial administrar tion and proper deference to other branches of government under Article II, section 3 of the Florida Constitution must be given due respect. See generally Detournay v. City of Coral Gables, 127 So.3d 869, 873 (Fla. 3d DCA 2013) (describing doctrine of sovereign immunity as founded on principle of separation of powers, “one of the structural pillars upon which American freedoms rest: ‘under the constitutional doctrine of separation of.-powers, the judi *1166 cial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights.’ To hold otherwise ... ‘would require the judicial branch to second guess the ... police power decisions of the other branches of government and would violate the separation of powers doctrine.’ ” (citing Trianon Park Condo. Ass’n, Inc. v. City of Hialeah, 468 So.2d 912, 918 (Fla.1985) (emphasis added))). Here, as we now recognize, there is no federal or state constitutional right of a state prisoner to remain in the prison’s general population. Therefore, the only question posed by a challenge to a Department decision assigning a state prisoner to Close Management is whether the Department acted with “no” evidence to support its decision or possibly acted in a completely arbitrary fashion, in which case, relief may be granted by extraordinary writ of mandamus, not by writ of habeas corpus, as no constitutional right to release or a new trial is at issue.
Close Management prison classifications do not create conditions that are “atypical” of general population status, to the extent that a liberty interest would be created under the Due Process Clause. See generally Al-Amin v. Donald, 165 Fed.App’x 733, 737-38 (11th Cir.2006) (holding that state prisoner challenging confinement in administrative segregation for approximately three years did not establish liberty interest “under the particular facts of this case,” therefore, it is “unnecessary for us to determine whether ... procedures for confining Al-Amin to administrative segregation and for keeping confined there provided Al-Amin with due process”) (emphasis added). In Al-Amin, the court noted that confinement “to administrative segregation, under conditions substantially similar to those experienced by the general population of the prison, does not implicate liberty interests,” despite the lengthy time Al-Amin had been so confined. Id. at 738. But the Court cautioned that state officials must periodically review such status, which by their own rules are required in Florida by the Department. Cf. Wilkinson v. Austin, 545 U.S. 209, 213, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (holding that transfer to “super-max” facility in which “almost all human contact” was prohibited and confinement was indefinite implicated a liberty interest). Significantly, here there is no Eighth Amendment claim that assignment to Close Management as a matter of law constitutes cruel and unusual punishment. Osterback v. McDonough, 549 F.Supp.2d 1337, 1356-63 (M.D.Fla.2008) (holding no Eighth Amendment violation in Department’s Close Management regulations, stating “Inmates in [Close Management] have the same, cell furnishings as inmates in the general population .... [and] receive the same clothing and bedding that general population inmates receive. The barber and grooming services for [such] inmates and open population inmates are also the same [as are] the same three meals each day that open population inmates receive .... [they] are provided with adequate opportunities'to exercise— [Close Management] inmates have adequate access to educational opportunities, and have adequate opportunities to make canteen purchases and engage in visitation.”); Groose, 873 S.W.2d at 223 (holding that where claim fails to allege cruel and unusual punishment, “habeas corpus is not available to attack the conditions of his confinement”). There is simply no credible argument, based on the regulations establishing Close Management parameters, that these restrictions on their face are “atypical” of the general population.
As such, individualized claims that the Department has failed to follow its *1167 own rules in assigning a prisoner to Close Management are not valid' assertions of constitutional claims but, rather, allegations of such state law violations that do not implicate a constitutionally-protected liberty interest. But if an inmate alleges that a condition of Close Management is cruel and unusual punishment, thus-violating the Eighth Amendment, such a claim could be cognizable by petition for writ of habeas corpus. Absent such an allegation, however, we hold that an inmate’s challenge to assignment to Close Management may only be asserted by filing a petition for writ, of mandamus in Leon County, the Department’s headquarters. As we wrote in Plymel, the prisoner’s burden of persuasion in seeking mandamus relief to challenge an assignment to Close Management will be to show that “he has a clear legal right to the performance of a clear legal duty by a public officer, and that he has no other available legal remedies.” 770 So.2d at 246. Further, the inmate must show that he has exhausted all available administrative remedies. Id. Once the petition for writ of mandamus establishes a 'prima facie entitlement to relief, the circuit court should issue an order to show cause why such relief should not be granted. Holcomb, 609 So.2d at 751. As noted above, review in this court of a circuit court’s decision will be by “second-tier” certiorari. Plymel, 770 So.2d at 246 (noting that “a circuit court order ruling on an administrative action is renewable in the district court by certiorari”). As we held in Ply-mel, the standard of review of a circuit court order- is “limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law.” 770 So.2d at 246. See also Woullard v. Bishop, 734 So.2d 1151 (Fla. 1st DCA 1999). Thus, for example, if a prisoner alleges he has been deprived of the periodic review required by the rules described above, he may be entitled to mandamus relief; ■ merely disagreeing with the Department’s discretionary decisions cannot show entitlement to relief,, as there would be no showing of a “clear legal right.”
We respectfully disagree with the concern expressed- in Judge -Wolfs concurring and dissenting opinion that our opinion today must always lead an inmate to a “dead end” where no relief can be granted. As noted above, should the inmate state a prima facie case that the Department failed to comply with its .own rules — for example, by refusing to ensure the inmate’s status continues to meet the Department’s criteria-under its own rules — a circuit court could be required to issue a show cause order to the Department, necessitating further evaluation in that court. See, e.g., Moore v. Fla. Parole & Prob. Comm’n, 289 So.2d 719, 720 (Fla.1974) (holding mandamus ..will not lie to compel grant of parole, which is solely within the discretion of the Parole and Probation Commission, but “[t]he Parole Commission is required, as any other body, to comply with constitutional requirements; it cannot deny parole upon illegal grounds or upon improper considerations. It is answerable in mandamus if it does.”) (emphasis added)), cert. den., 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974). Relevant here, in Moore, the Florida Supreme Court held that habeas corpus was not available to an inmate to challenge a Presumptive Parole Release Date, which does not entitle an inmate to a reasonable expectation of imminent release from prison. In contrast, an inmate’s claim that an Effective Parole Release Date has been improperly set, which can more likely affect an inmate’s opportunity for release from prison, can be asserted by petition for writ of habeas corpus. See Fla. Parole & Prob. Comm’n v. Dornau, 534 So.2d 789, 792 (Fla. 1st DCA 1988) (citing Griffith v. Fla. Parole & *1168 Prob. Comm’n, 485 So.2d 818 (Fla.1986), and noting that “judicial review is available only through the common law writs of mandamus, for review of [Presumptive Parole Release Dates], and habeas corpus, for review of [Effective Parole Release Dates].”); see generally Sheley v. Fla. Parole Comm’n, 703 So.2d 1202, 1205 (Fla. 1st DCA 1997) (citing Griffith and recognizing that the Florida Supreme Court established that “review of Parole Commission orders was ... available by mandamus or habeas corpus,” and establishing second-tier certiorari review of denial of mandamus relief against Parole Commission); see also Richardson v. Fla. Parole Comm’n, 924 So.2d 908 (Fla. 1st DCA 2006) (holding that inmate stated claim in habeas corpus challenging Florida Parole Commission’s order revoking conditional release supervision and remanding him to state prison). Thus, similar to the parole (and. conditional release) context, here, where the Department assigns an inmate to Close Management, should the inmate challenge this decision by petition-for writ of mandamus, the circuit court will determine whether a prima facie case has been established that the Department relied on improper considerations or failed to follow its own rules, Such a proceeding lies.appropriately in mandamus, filed and considered in the Second Circuit Court in Leon County, where the Department’s headquarters- are located, not by petition for writ of habeas corpus.
3. Stare Decisis
By our decision today, we recede from prior- case law that improperly subjected prison management decisions to extraordinary judicial review by habeas corpus based on flawed analyses long rejected' by the United States Supreme Court, as thoroughly discussed above. As the United States Supreme Court has recognized, although stare decisis is the “preferred- course” in the judicial process, “when governing decisions are unworkable or are badly reasoned, 'this ■ Court has never felt constrained to follow precedent.’ ” Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (overruling prior decisions prohibiting admission of victim impact statements in capital murder prosecutions where the death penalty may be imposed) (quoting Smith v. Allwright, 321 U.S. 649, 655, 64 S.Ct. 757, 88 L.Ed. 987 (1944)). As the Court also recognized' in Payne, considerations of stare decisis are particularly weak in cases in which legislative correction is either impossible or difficult to achieve. Id. Rather, deference to stare decisis is most important in cases “involving property and contract rights, where reliance interests are involved.” Id. at 828, 111 S.Ct. 2597. Here, all these considerations support our decision to recede from contrary prior case law. The prior decisions were based bn flawed logic, the decisions cannot be easily abrogated by the legislature, as they implicated constitutional interests, and the prior decisions do not affect property or contract rights. By contrast, the prior decisions erroneously thrust this court into improper judicial second-guessing of the Executive Branch’s daunting and dangerous duty to manage state prisons and strive to protect staff and inmates, as well as public visitors. By providing that Close Management prison classifications áre reviewablé only by writ of mandamus filed in the Second Circuit Court in Leon County, we will enhance stability- and uniformity in circuit court review and better accord due deference to the Executive Branch. '; -
4, Petitioner’s Claim
Here, Petitioner did not assert that Department officials failed to adhere to periodic review or any other minimum procedures established,by their own rules. *1169 Thus, whether the Department correctly-determined that Petitioner’s act of spitting in the face of an examining psychiatrist was an act “likely to cause injury” is a discretionary decision, and may not be. the basis for mandamus relief. Smith v. State, 696 So.2d 814, 815 (Fla. 2d DCA 1997) (recognizing that mandamus “is a common law remedy to be used to enforce an ‘established legal right by compelling a person in an official capacity to perform an indisputable ministerial duty required by law.’ ” (citation omitted)). In Cason v. McDonough, 943 So.2d 861, 862-68 (Fla. 1st DCA 2006), this court noted that the Florida Supreme Court in Dugger v. Grant, 610 So.2d 428, 432 (Fla.1992), stated that a “modicum” of evidence is sufficient to satisfy the “some evidence” standard required to sustain a prison disciplinary report under Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In other words, as long as there is “some evidence” that Petitioner committed the act alleged, which he did not deny below, then mandamus relief must be denied.
Here, Petitioner failed to deny that he spat, in the staff psychologist’s face but, rather, made only conclusory allegations that such an act could not “injure” another. As this is not a criminal proceeding, it was not necessary for the Department to find Petitioner guilty beyond a reasonable doubt, so cases discussing the State’s burden of persuasion in criminal prosecutions are inapposite. Smiley v. State, 948 So.2d 964, 964 (Fla. 5th DCA 2007) (holding that “ ‘[Revocation of good time credits [in prison disciplinary context] is not comparable to a criminal conviction, arid neither the amount of evidence necessary to support such ■ conviction, nor any other standard greater than some evidence applies in this context.’ ” (quoting Dugger v. Grant, 610 So.2d 428, 432 n. 3 (Fla.1993) (emphasis in original))). Cf. Bujno v. Dep’t of Corr., 1 So.3d 1138 (Fla. 1st DCA 2009) (holding that because circuit court did not require Department to directly respond to merits of prisoner’s defense, evidence was insufficient to affirm circuit- court’s ruling of guilty of possession of contraband by constructive possession). Here, Petitioner failed to show a prima facie entitlement to extraordinary relief, because he failed1 to deny that he did not spit in the psychologist’s face. See Holcomb, 609 So.2d at 751. Here, the petition itself failed to sufficiently allege that the Department unlawfully classified Petitioner to Close Management status, by neither denying that he committed the acts involved or asserting a credible argument that such acts were not an adequate basis for the reclassification. .
Therefore, we can affirm the denial of relief here, even though the circuit court did not, and could not, consider the claim in mandamus. See John v. Crews, 149 So.3d 149 (Fla. 1st DCA 2014) (holding that although circuit court applied incorrect law regarding prisoner’s cause of action and entitlement to avoid filing fee, decision would be affirmed, as prisoner serving life sentence had no entitlement to gaintime award, and no liberty interest was implicated). Therefore, we affirm the circuit court’s denial of relief without further proceedings.
Conclusion and Conflict Certified
We acknowledge that in Holland, the Fifth District affirmed a circuit court order denying the writ ' of 'habeas corpus without discussing whether that was the proper remedy after the United States Supreme Court decided Sandin, but which cited our decisions in Taylor v. Perrin, 654 So.2d 1019 (Fla. 1st DCA 1995), and Granger. Holland, 791 So.2d at 1257. Because we recede from our prior decisions in this court allowing such claims to be considered *1170 in habeas corpus, we certify conflict with Holland. We also acknowledge that in Harvard v. Singletary, 733 So.2d 1020, 1024 (Fla.1999), the Florida Supreme Court transferred a petition challenging a Close Management assignment to the county in which the prisoner was incarcerated. But that decision discussed the supreme court’s rationale for transferring petitions for extraordinary relief requiring factual findings, and the court specifically stated that it was not making a decision “that the petition has been properly titled a petition for writ of habeas corpus.” In addition, the supreme court acknowledged that a filing fee could be required. Thus, we do not read Harvard as a decision on the merits determining that claims challenging assignments to Close Management must be considered by petition for writ of habeas corpus.
We also acknowledge that, by our decision today, prisoners challenging such decisions by petition for writ of mandamus will be required to pay a filing fee pursuant to sections 57.081 and 57.082, Florida Statutes, absent a decision that they are indigent. See John v. Crews, 149 So.3d 149 (Fla. 1st DCA 2014) (discussing appropriate statute applicable to claims challenging disciplinary confinement, but affirming dismissal for failure to qualify for fee exemption on other grounds). In some cases, this may impose a hardship on non-indigent prisoners attempting to challenge assignment to Close Management, but that implication is a policy matter addressed to the legislative branch, as our decision that such claims do not lie in habeas corpus precludes this court from engaging in that determination.
The amended petition for writ of certio-rari is DENIED on the merits, for reasons stated above, and conflict to Holland v. State, 791 So.2d 1256 (Fla. 5th DCA 2001), is certified.
DENIED ON THE MERITS; CONFLICT CERTIFIED.
ROBERTS, C.J., and LEWIS, WETHERELL, ROWE, RAY, OSTERHAUS, KELSEY, and WTNOKUR, JJ., concur.
WOLF, J., concurs in part and dissents in part in an opinion in which MAKAR, BILBREY, JAY, and M.K. THOMAS, JJ., join.
MAKAR, J., dissents in an opinion in which BILBREY, J., joins.
WINSOR, J., recused.

. Michael Ufferman, appointed by this court, was assisted in the research provided in his brief by Lance Stephens, a second-year law , student at The Florida State University College of Law. This court acknowledges the excellent representation provided by Mr. Uf-ferman on behalf of the Petitioner.